UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RITCHIE PHILLIPS, dba R&D COMPUTERS<br><br>Plaintiff,<br><br>v.<br><br>NETBLUE, INC., formerly known as YFDIRECT, INC., et al.,<br><br>Defendants. | No. C-05-4401 SC<br><br>ORDER DENYING DEFENDANTS' MOTION FOR LEAVE TO AMEND ANSWER |

Plaintiff Ritchie Phillips, dba R&D Computers ("Plaintiff") brought this action against Netblue, Inc., formerly known as YFDirect, Inc., et al. ("Defendants"), alleging violations of the Controlling the Assault of Non-Solicited Pornographic and Marketing ("CAN-SPAM") Act of 2003, 15 U.S.C. §§7701 et seq. and California Business and Professions Code §§17529 et seq. See Complaint. Defendants move the Court for Leave to Amend their Answer. See Defendants' Motion for Leave to Amend Answer ("Motion"). For the reasons stated herein, the motion is DENIED.

I.  **BACKGROUND**

Plaintiff alleges that from August 27, 2005 through September 30, 2005, Defendants sent "in excess of 1500 deceptive and

1 unsolicited commercial email messages," commonly known as "spam,"
2 to Plaintiff's server.  Complaint at 4.  According to the
3 Complaint, the Spam emails were deceptive for the following
4 reasons:

> 1) each "contain[ed] and [was] accompanied by falsified, misrepresented, or forged header information," which rendered the header information "materially false or materially misleading."
>
> 2) each had "a subject line that a person would know would be likely to mislead a person . . . about a material fact regarding the contents and subject matter of the message;"
>
> 3) each "did not contain a return electronic mail address or other internet-based mechanism" which could be easily used by Plaintiff to request that he no longer receive similar email messages in the future;"
>
> 4) each contained neither "a clear and conspicuous identification that the messages as an advertisement or solicitation[,] . . . a clear conspicuous notice of the opportunity to decline to receive further" spam from the sender, nor "a valid physical postal address of the sender."

Id. at 4-5.  The Complaint further "alleges Defendants used a harvest and directory attack or used an automated creation of multiple email accounts to send" the messages.  Id. at 5.

The Complaint, filed on October 28, 2005, claims that these alleged acts constitute violations of the following provisions of the CAN-SPAM Act of 2003:  §7704(a)(1)("Prohibition of false and misleading transmission of information"); §7704(a)(2)("Prohibition of deceptive subject headings"); §7704(a)(3)("Inclusion of return address or comparable mechanism in commercial electronic mail"); §7704(a)(5) ("Inclusion of identifier, opt-out, and physical address in commercial electronic mail"); §7704(b)(1)("Address harvesting and dictionary [sic] attacks); and

1  §7704(b)(2)("Automated creation of multiple electronic mail
2  accounts").  <u>See</u> <u>id.</u> at 5-6.  On this basis, Plaintiff seeks
3  statutory damages, injunctive relief, and attorneys fees and costs
4  under §7706(g).  <u>See</u> <u>id.</u> at 6.
5  　　Plaintiff's state law claim alleges violations of the
6  following provisions of the California Business and Professions
7  Code:  §17529.5(a)(2)("falsified, misrepresented, or forged header
8  information"); and §17529.5(a)(3)(misleading subject line).  <u>See</u>
9  Complaint at 7.  On this basis, Plaintiff seeks statutory
10 (referred to in the statute as "liquidated") damages and attorneys
11 fees and costs.  <u>See</u> <u>id.</u>
12 　　On October 27, 2006, Defendants filed the instant Motion for
13 leave from the Court to amend their answer so as to add the
14 following affirmative defense:

> Plaintiff has failed to mitigate his damages.  Plaintiff
> has not taken reasonable steps to avoid receipt of the
> emails, and therefore, his damages should be reduced
> accordingly.  Other than filing this lawsuit, Plaintiff
> has made no effort to notify Defendants that Plaintiff
> and/or Plaintiff's customers do not wish to receive
> marketing emails; instead Plaintiff has attempted to
> collect as many emails as possible on Plaintiff's
> server.

20 Motion at 6, n. 3.  Plaintiff has opposed the Motion on the ground
21 that the amendment would be futile.  <u>See</u> Opposition to Motion to
22 Amend Answer ("Opposition").

### II.  **STANDARD OF REVIEW**

25 　　"Leave to amend shall be freely given when justice so
26 requires."  <u>Miller v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th
27 Cir. 1988).  Generally, this means that a motion for leave to

3

amend the answer will be granted absent a showing of prejudice to the plaintiff. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

However, "[a] motion to amend may be denied if it appears to be futile or legally insufficient." Miller, 845 F.2d at 214. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleading that would constitute a valid claim or defense." Id. Thus, evaluating whether a proposed amendment is futile is guided by the same standard as a Rule 12(b)(6) motion to dismiss. Id. A motion to amend the answer will be denied on the ground of futility only if it appears beyond doubt that the defendant can prove no set of facts in support of the proposed amendment. See, generally, Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). In reviewing the motion, a court must assume all factual allegations made by the nonmoving party to be true and construe them in the light most favorable to the nonmoving party. See, generally, North Star Intern. v. Arizona Corp. Comm'n, 720 F.2d 578, 590 (9th Cir. 1993).

**III. DISCUSSION**

Plaintiff's argument that Defendants' proposed amendment would be futile raises what appear to be two issues of first impression: 1) whether the doctrine of mitigation of damages applies to the award of statutory damages under the CAN-SPAM Act, 15 U.S.C. §7706(g); and 2) whether the doctrine of mitigation of damages applies to the award of statutory damages under Cal. Bus.

4

& Prof. Code §17529.5(b). The Court finds in both cases that the doctrine does not apply.

### A. **CAN-SPAM Act**

The Court finds that the statutory damages provision in the CAN-SPAM act is a penalty and, as such, the award of such damages is not subject to the doctrine of mitigation of damages. It further finds that the application of the doctrine mitigation of damages to cases brought under the Act would run contrary to Congress's intentions in enacting it, evidenced in the Act's structure.

#### 1. **Statutory Damages under the CAN-SPAM Act are Penalties**

Section 7706(g)(1)(B) allows internet service providers ("ISPs") suing alleged spammers for violations under §7704 "to recover damages in an amount equal to the greater of . . . actual monetary loss incurred by the [ISP] as a result of such violation" or statutory damages according to the scheme outlined in §7706(g)(3) of the law. 15 U.S.C. §7706(g)(1)(B). The law's statutory damages provision allows ISPs to recover $100.00 per email for violations of §7704(a)(1) and $25.00 per email for violations of any other provision of §7704. 15 U.S.C. §7706(g)(3). Recovery of statutory damages for violations of §7704(a)(1) are uncapped, while recovery of statutory damages for violations of any other provision of §7704 are capped at $1,000,000.00. 15 U.S.C. §§7706(g)(3)(B). The law also contains provisions which give courts the discretion to reduce the amount of statutory damages on the basis of the relative wrongfulness of a defendant's behavior. See 15 U.S.C. §7706(g)(3)(D).

Specifically, the law allows courts to reduce the amount of statutory damages awarded if it finds that the defendant has, since the violation, established commercially reasonable practices and procedures designed to effectively prevent further violations or if the violation occurred despite the violator's reasonable efforts to comply with previously implemented practices and procedures. 15 U.S.C. §7706(g)(3)(D). Similarly, the law gives courts the discretion to increase (up to three times) the amount of statutory damages awarded if it finds aggravating factors, specifically, that the violation was done "willfully and knowingly" or included "one or more of the aggravated violations set forth in section 7704(b)," all of which involve knowing and willful use of technology to facilitate acts in violation of other provisions of the Act. 15 U.S.C. §7706(g)(3)(C).[1]

Each of these basic elements of the Act's statutory damages provisions indicates that the damages are meant as a penalty. Giving an ISP plaintiff the right to collect the "<u>greater of</u>" actual damages or statutory damages indicates that Congress was more concerned with the spammer being appropriately punished than with the plaintiff being made whole. 15 U.S.C. §7706(g)(1) (emphasis added). Similarly, the Act's provisions governing a

---

[1] Section 7704(b) lists: "Address harvesting and dictionary [sic] attacks[,] . . . Automated creation of multiple electronic mail accounts[, and] . . . Relay or retransmission through unauthorized access." 15 U.S.C. §7704(b) The Court notes that the work "dictionary" quoted above is likely errata, and should read "directory." The substance of §7704(b)(1) deals completely with the improper procurement or creation of email addresses, which would be contained in a directory, not a dictionary. 15 U.S.C. §7704(b)(1).

6

court's decision whether to reduce or increase the amount of statutory damages turn on a determination of the relative wrongfulness of the defendant's actions. See 15 U.S.C. §§7706(g)(3)(C), (D).[2]  Finally, the cap on statutory damages for violations of §7704 other than §7704(b) reflects Congress's determination of the relatively greater wrongfulness of the latter sort of violation, rather than the desire to additionally compensate its victims:  violations under §7704(b) involve concerted and willful efforts to affect as many people as possible, as opposed to a more grievous injury to any particular person. See 15 U.S.C. §7706(g)(3)(B).  The Court therefore finds that the statutory damages available for ISPs who bring suit under the Act are penalties.[3]

### 2. Doctrine of Mitigation of Damages is not Applicable to Statutory Damages with a Penal Purpose

Having determined that the CAN-SPAM Act's statutory damages provisions are meant to penalize the spammer as opposed to

---

[2] Defendants concede as much regarding §7706(g)(3)(D):  "the language of that section focuses on the conduct of defendants." Motion at 9.

[3] This conclusion is reinforced by the following:  the same statutory damages, along with the same limiting and aggravating factors are available to States which bring enforcement actions under cases under the Act, see  15 U.S.C. §7706(f)(3); and indications of the Act's overall penal purpose evident in its provisions for criminal prosecution for violations, see 15 U.S.C. §§7703, 7704(d)(5), its provisions for quasi-criminal prosecutions, see 15 U.S.C. § 7706(f)(9) (requirement of scienter for initiation of enforcement actions by state for certain less egregious violations of the law), and statements in the Act's legislative history, see, e.g., CAN-SPAM Act of 2003, S. Rep. 108-102, 108th Cong. (2003)(listing under the heading "Purpose of the Bill" only requirements and prohibitions going to spammers and nothing regarding compensating spams' victims).

7

1  compensate the victims of spam, the Court concludes that the
2  doctrine of mitigation of damages has no applicability to any
3  determination regarding the award of such damages.
4  　　　The Ninth Circuit has not addressed whether the doctrine of
5  mitigation of damages applies to an award of statutory damages
6  under the CAN-SPAM Act, and does not appear to have precisely
7  addressed the broader question of whether and when the doctrine
8  applies to the award of statutory damages to a private plaintiff.
9  However, it has recognized that statutory damages can be meant to
10 either penalize a defendant or compensate a plaintiff.  Nintendo
11 v. Dragon Pacific International, 40 F.3d 1007, 1011 (9th Cir.
12 1994).  And when statutory damages take the form of a penalty,
13 they "serve a completely different purpose than actual damages."
14 Id.
15 　　　The Tenth Circuit took this principle to its logical
16 conclusion in Moothart v. Bell, 21 F.3d 1499, 1506-07 (10th Cir.
17 1994).  Discussing the ERISA statutory damages provision, which
18 the court had already determined was penal, the court noted that
19 when determining whether to award such damages, "[t]he focus is
20 necessarily on the plan administrator's actions not the
21 participants."  Id.  at 1507.  This focus, it found, could not be
22 rectified with an application of the doctrine of mitigation of
23 damages, which focuses solely on the reasonableness of the
24 plaintiff's actions.  Id. at 1506-07.
25 　　　Such reasoning is particularly persuasive here, where the
26 Act's statutory damages provisions overwhelmingly focus on the
27 relative wrongfulness of the defendant's behavior.  Thus, the
28

Court concludes that the doctrine of mitigation of damages cannot logically apply to the Court's decision regarding any award of statutory damages to Plaintiff under the CAN-SPAM Act.

### 3. The Substance of the Defendants' Proposed Mitigation Defense Runs Contrary to the Structure of the CAN-SPAM Act as a Whole

The Court further finds that the affirmative defense which Defendants propose to add to their answer runs contrary to the structure of the CAN-SPAM Act as a whole, shifting from the spammer to the recipient of SPAM the responsibility to limit receipt of unwanted spam.

The CAN-SPAM Act creates a number of provisions which require spammers to offer recipients methods to opt-in or opt-out of the receipt of spam.[4] And, as discussed above, the Act allows reduction of statutory damages for spammers who attempt in good faith to comply with these provisions and others designed to limit their violations of the Act. See 15 U.S.C. §§7706(f)(3)(D), 7706(g)(3)(D). By requiring recipients, rather than spammers, to take actions necessary to limit their receipt of spam, Defendants' proposed affirmative defense would turn this section of the Act on its head. In addition to improperly shifting to the victim the responsibility to avoid spam, allowing the proposed affirmative defense would eliminate any incentive for spammers to comply with the statute's opt-in and opt-out procedures. It cannot be imagined that Congress intended this result.

---

[4] See §§7704(a)(3)(B), (4)(B), (5)(B), 7704(d)(2).

9

Relatedly, the language and structure of the Act also supports the position that Congress believed it very difficult for recipients to limit the amount of spam they receive, which runs contrary to the idea that a recipient has an affirmative duty to take actions to effect such a limitation. Among the law's findings is recognition that: "[m]any senders of unsolicited commercial electronic mail purposefully disguise the source of such email," §7701(a)(7); and that it is difficult or impossible for recipients to opt-out of the receipt of email from some senders, §7701(a)(9). And the Act orders the Federal Trade Commission ("FTC") to create a bounty payable to those who track down the identity of a spammer and provide information leading to the successful collection of a civil penalty by the FTC. See 15 U.S.C. §7710. It strains credibility to imagine that Congress would have intended to require recipients to engage in a task which its own findings find to be often futile and/or impossible as a condition of claiming statutory damages. This is especially so in light of the Act's orientation towards preventing the inefficiencies which spamming already creates. See §§7701(a)(2), 7701(a)(3), 7701(a)(4), 7701(a)(6).

**B.     California Business & Professions Code §17529.5**

The Court finds that statutory damages available to ISPs under California Business & Professions Code §17529.5 are also penalties, and thus the doctrine of mitigation of damages has no application to its decision regarding whether or how much of such damages to award Plaintiff.

California law recognizes the distinction between statutory damages which are compensatory in nature and those which are penal. In <u>Beeman v. Burling</u>, the court distinguished between the two on the basis of whether there exists a relationship between the amount of statutory damages awarded and the actual damages suffered by the plaintiff as a result of the wrongful act: "Statutory damages may either take the form of penalties, which impose damages in an arbitrary sum, regardless of actual damages suffered, or, . . . may provide for the doubling or trebling of actual damages as determined by the jury." 21 Cal.App.3d 1586, 1589 (Cal. App. Ct. 1990). The <u>Turnbull & Turnbull v. ARA Transportation, Inc.</u> court focused its determination on whether the purpose of the statutory damages was punitive as opposed to compensatory. 219 Cal.App.3d 811, 826 (Cal. App. Ct. 1990) (disallowing plaintiff from receiving punitive damages in addition to statutory damages in the former situation but allowing it in the latter).

Under the reasoning of <u>Beeman</u> and <u>Turnball</u>, the statutory damages provisions in Section 17529.5 are penalties. Section 17529.5(b)(1)(B) states that those eligible to bring suit under the law, including ISPs, "may recover <u>either or both</u> of the following: (i) Actual damages. (ii) Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident." Cal. Bus. & Prof. Code §17529.5(B) (emphasis added). By allowing a plaintiff to recover "either or both" of actual damages and statutory damages,

this sections makes clear that the two kinds of damages are different and thus logically serve different purposes: compensatory in the case of the former and penal in the case of the latter.

This conclusion is reinforced by the fact that any calculation of statutory damages is completely independent of any determination regarding actual damages.  Indeed, the Assembly Committee on Judiciary analysis states:  "In addition to actual damages (likely to be small in many such suits) the bill permits the plaintiff to seek liquidated damages . . ."  CA B. An., S.B. 186 Assem., June 26, 2003.  The penal purpose of the statutory damages provision is further emphasized by sections of the code which, like their federal counterparts, provide for a reduction of statutory damages upon a finding of mitigating factors based on a defendant's conduct.  See Cal. Bus. & Prof. Code §17529.5(b)(2).[5]

The Court, having concluded that the statutory damages provisions in §17529.5 are penalties, finds that the reasoning of the 10th Circuit in Moothart, discussed above, is applicable to the question of whether mitigation of damages applies to Plaintiff's §17529.5 claim.  Applying this reasoning, and for the

---

[5]As with the CAN-SPAM Act, the Court finds other factors related to the Section's structure as a whole which point to its overriding penal purpose, such as the Section's provision of criminal penalties for violations of its prohibitions, indicate the impropriety of applying the doctrine of mitigation of damages to any decision regarding the award of statutory damages under the law.  See Cal. Bus. & Prof. Code §17529.5(c)

12

reasons already discussed, the Court concludes it does not apply.[6]

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Leave to Amend their Answer is futile and is therefore DENIED.

IT IS SO ORDERED.

Dated: December 12, 2006



UNITED STATES DISTRICT JUDGE

---

[6] The Court further notes that, as would be the case with the CAN-SPAM Act, allowing for application of the doctrine of mitigation of damages would run contrary to the intentions of the California State Legislature. Their findings indicate their belief that it is difficult or impossible for recipients to control the receipt of spam. See, e.g., Cal. Bus. & Prof. Code §§17529(f),(i),(j).