1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Jason K. Singleton**, State Bar #166170
lawgroup@sbcglobal.net
**Richard E. Grabowski**, State Bar #236207
rgrabows@pacbell.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX  441-1533**

**Attorneys for Plaintiff, R&D COMPUTERS**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

RITCHIE PHILLIPS, dba R&D COMPUTERS,

     Plaintiff,

vs.

NETBLUE, INC., formerly known as
YFDIRECT, INC., also doing business as
MARKETSURVEYGROUP.COM, also dba
EASYEZSTREET.COM, also dba
MINGLYCOMP.INFO, also dba
EVERYFREEGIFT.COM, KENNETH CHAN,
aka KENNETH CHEN, SCOTT REWICK,
DEREK PILCH, FREDRICK HARMAN, and
DOES ONE through FIFTY, inclusive,

     Defendants.

Case No.  C-05-4401 SC

**MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
DEFENDANTS MOTION FOR SUMMARY
JUDGMENT**

DATE:  **February 16, 2007**
TIME:  **10:00 A.M.**
CTRM:  **1**
      **Honorable Samuel Conti**

# TABLE OF CONTENTS

INTRODUCTION.. .......... .......... ..................... .......... ......... ......... .......... ......... .......1

1.  In their Motion for Summary Judgment (hereafter "MSJ"), Defendants
    misstate and ignore the evidence presented by Plaintiff. ......... .......... .......... ......... .........2

2.  Defendants' interpretation of the law is unsound......... .......... .......... .......... ..........3

STATEMENT OF FACTS ......... .................... .......... .......... ......... ......... ..........3

1.  Plaintiff is an Internet Access Provider (hereafter IAP or ISP)......... .......... ......... .........3

2.  Plaintiff has demonstrated that the emails were sent on behalf of Defendants. ...... ..........4

3.  Plaintiff has demonstrated that the emails contain false and misleading
    header information. .......... .................... .......... ......... .......... ......... .......5

4.  Plaintiff has proved evidence that the emails were not solicited. ........ .......... ......... .........6

5.  Defendants knew or consciously avoided knowing they were hiring known
    spammers and that those entities were using SPAM.... .......... ......... .......... .........6

6.  Plaintiff was adversely affected by Defendants' SPAM. .......... .......... ......... .......... .......7

ARGUMENT .......... .......... .......... .................... .......... .......... ......... .......... .........7

1.  Legal Standard for consideration of a Motion for Summary Judgment....... .......... .........7

2.  Legal Standard for evidence at summary judgment.... .......... .......... ......... .......... .........8

3.  Plaintiff was adversely affected by Defendants' SPAM emails. ........ .......... .......... .........9

4.  Plaintiff has provided sufficient facts proving the emails were unsolicited in
    violation of *California Business and Professions Code §17529.5.*  Defendants have
    failed to provide any evidence to the contrary… .......... .......... .......... .......... .......18

5.  Plaintiff has provided extensive evidence that the emails at issue contain
    false headers and misleading subject lines in violation of the *CAN SPAM Act*
    and *California Business and Professions Code* §17529.5.  Defendants have provided
    no contrary evidence. ........ .................... .......... .......... .......... ......... .......... .......20

6.  Defendants legal argument that Plaintiff's request that statutory penalties are
    improper without a reasonable relationship to actual damages is based on a
    faulty legal premise.......... .................... .......... .......... ......... .......... .......23

CONCLUSION....... .......... .......... .................... .......... .......... .......... .......25

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) .................................8

*Beeman v. Burling*, 21 Cal.App.3d 1586, 1589 (Cal. App. Ct. 1990) .....................24

*Bulthuis v. Rexall Corp.*, 789 F.2d 1315 at 1318 (9th Cir. 1985) .....................9, 23

*Campos v. ChoicePoint, Inc.*, --- F.R.D. ----, 2006 WL 2578791 at 6 (N.D.Ga. 2006).12

*Celotex Corp. v. Catrett*, 477 U.S. 317 at 323 (1986).........................7, 8, 9, 21

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424

   (U.S.Or.,2001) ...........................................................................24

*Doe v. Chao*, 540 U.S. 614 (2004) ....................................................10, 12

*Hom Sin v. Esperdy*, 239 F.Supp. 903 at 905 (D.C.N.Y. 1965)........................13, 14

*Hypertouch, Inc. v. Kennedy-Western University*, Slip Copy, 2006 WL 648688 at 4

   (N.D.Cal. 2006) ......................................................................passim

*In re Hawaiian Airlines, Inc.*, --- B.R. ----, 2006 WL 2263891 (D.Hawai'i,2006)........10

*In re: The Exxon Valdez (Bakers v. Exxon Mobil Corp.)*, - F.3d - , 2006 U.S. App.

   Lexis 310503, at 37 – 38, 2006 WL 3755189, (9th Cir. 2006) ......................24

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S.

   694 at 705 (1982).....................................................................20

*Nintendo v. Dragon Pacific International*, 40 F.3d 1007, 1011 (9th Cir. 1994) ...........24

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 at 1136 (9th Cir. 2002) .....13, 14

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (U.S.,2003) .................24, 25

*Turnbull & Turnbull v. ARA Transportation, Inc.*, 219 Cal.App.3d 811, 826 (Cal.

   App. Ct. 1990) .......................................................................24

## STATUTES

15 USC 7701(6) ...........................................................................17

15 *USC* 7701(b) ..........................................................................17

15 USC 7702(11) ...........................................................................3

15 *USC* 7704(a) ...........................................................................9

**15 *USC* 7704(a)(1)**...................................................................................**21**

**15 *USC* 7704(a)(2)**...................................................................................**21**

**15 USC 7706(g)** ................................................................**12, 17, 24**

**15 USC 7706(g)(1)**...................................................................................**11**

**15 *USC* 7706(g)(1)(B)(i)** ........................................................................**12**

**15 *USC* 7706(g)(1)(B)(ii)** .......................................................................**12**

**15 USC 7706(g)(3)** ...................................................................................**12**

***Americans with Disabilities Act*** .........................................................**12**

***California Business and Professions Code* §17529.1(d)** ...................**19**

***California Business and Professions Code* §17529.1(o)** ...................**18**

***California Business and Professions Code* §17529.5**........................**passim**

***California Business and Professions Code* §17529.5(a)** ...................**18**

***California Business and Professions Code* §17529.5(a)(2)** ...............**21**

***California Business and Professions Code* §17529.5(a)(3)** ...............**21**

***California Business and Professions Code* §17529.5(b)** ...................**24**

***California Business and Professions Code* §17529.5(b)(1)(A)(i)** .................**18**

***California Business and Professions Code* §17529.5(b)(1)(B)(ii)** ................**18**

**CAN SPAM Act**.................................................................................**passim**

***Privacy Act* (5 *USC* § 552a(g)(4))**.......................................**10, 11, 12**

***Stored Communications Act* (18 *U.S.C.* § 2707(a)** ........................**10**

## <u>RULES</u>

***FRCP* Rule 26** ...........................................................................................**9**

***FRCP* Rule 26(c)** .....................................................................................**9**

***FRCP* Rule 56(c)**..........................................................................**7, 8, 21**

**INTRODUCTION**

Plaintiff has brought this action against Defendants after being attacked by Defendants and its affiliates, receiving as of November 2006, over 5600 SPAM emails.  Plaintiff intends to seek damages for all 5600 plus of the emails received and has notified Defendants of his intent. Defendants filed a Motion for Summary Judgment on December 29, 2006.  In filing their motion Defendants have attempted to create arguments that completely ignore the plain language and intent of the ***CAN SPAM Act*** and ***California Business and Professions Code*** §17529.5.

Defendants based their motion on four issues.  Defendants argue that Plaintiff must suffer "adverse affect" to bring an action under the ***CAN SPAM Act***.  Defendants argue that Plaintiff must provide evidence that the SPAM emails received by Plaintiff were "unsolicited" to bring an action under ***California Business and Professions Code*** §17529.5.  Defendants argue that Plaintiff has provided no evidence of violation of the statutes.  Finally, Defendants attempt to create a legal argument that penalties are improper when there is no relationship to actual damages.  Defendants are incorrect in their presentation of the facts and their legal conclusions.

Defendants have misstated the evidence and ignored the prior findings of the Court in this matter.  Defendants do not even cite the legal basis for their conclusions, failing to provide any legal support for their definitions of "adverse affect" and "unsolicited."  Plaintiff has provided proof of adverse affect sufficient to meet the requirements of the statute and current case law.  Plaintiff has provided adequate proof that the emails at issue were not solicited.  Defendants have been given repeated opportunities by the court to show that these emails were solicited, and they have failed to produce any evidence of proper solicitation, they have in fact failed to respond to the court's order on this matter.  Failure to produce evidence ordered by the court requires the presumption that the evidence does not exist.

Defendants have ignored or misstated the massive amount of evidence provided by Plaintiff regarding proof of false header information and misleading subject lines.  Defendants have blocked Plaintiff's attempts to gather evidence.   Defendants have misinterpreted the statutes and current case law regarding these issues.

///

1   **1.   In their Motion for Summary Judgment (hereafter "MSJ"), Defendants misstate and ignore the evidence presented by Plaintiff.**

2

3   Plaintiff did not state that he did not suffer an adverse affect related to the SPAM received.

4   Defendants have attempted to mischaracterize statements regarding incremental monetary losses or

5   expenditures as adverse affect.   Plaintiff states clearly that he did suffer adverse affect and his

6   deposition testimony states clearly what that adverse affect was.   In addition, an internet access

7   provider must anticipate use of his equipment and pre-buy resources in order to withstand any

8   reasonably predictable demand.   Demands from SPAM are reasonably predictable and any IAP

9   would be considered incompetent and suffer a significant loss of customers if he did not anticipate

10  SPAM activities and act accordingly.   A recent decision in the Northern California Federal District

11  supports this analysis.   Therefore, incremental increases in reaction to a SPAM attack are not

12  indicative of the investment required or adverse affect.   Incremental increases would only be

indicative of poor planning and poor management.

13  Defendants claim that Plaintiff has provided no evidence that the SPAM was unsolicited.

14  However, in its very first response to Defendants, in Plaintiff's response to Interrogatory No. 8,

15  Plaintiff provided a list of 14 emails that received SPAM from Defendants/Defendants' affiliates

16  that are inactive or have never been active.   Two of these emails accounts have not been active since

17  2000.   Netblue/YFDirect was first incorporated in January 2002.   Yet Netblue argues that Plaintiff

18  has not provided evidence that their SPAM emails were unsolicited, even though those email

19  accounts have not been active during any period that Netblue/YFDirect existed.   Most of these

20  emails were inactive long before implementation of the *CAN SPAM Act*, making it even more

21  unlikely that any proof of solicitation will meet the requirements of affirmative consent as defined in

22  the *CAN SPAM Act*.   The California statue requires that consent be given directly to the advertiser.

23  Therefore, it is not possible for accounts that were inactive, prior to 2002, to have consented to

24  receive advertisements from Netblue/YFDirect.

25  Defendants have also attempted to shift the burden of proof regarding whether the emails

26  were solicited by Plaintiff's customers to Plaintiff.   Plaintiff both alleged and provided evidence the

27  emails were unsolicited.   Defendants have been ordered by the court on two occasions to provide

28  proof of solicitation in response to Plaintiff's discovery requests.   In the court's discovery order of

November 21, 2006, the court ordered the parties to meet and confer and agree upon a third party to search Defendants' files for opt-in data.  Defendants were ordered to pay for the costs incurred.  As of the writing of this paper, Netblue has failed to sign the contract with Datachasers, Inc., the third party contractor agreed upon by the parties to do the work.  The solicitation data was originally ordered produced by the court on August 3, 2006.  It is now five months later and nothing has been produced.  Therefore Defendants have been ordered to provide evidence that either disproves Plaintiff's evidence and allegations or at least provides some other explanation.  Defendants have failed to provide any evidence.

**2.      Defendants' interpretation of the law is unsound.**

Defendants argue that by not associating statutory damages to actual damages the term "adverse affect" becomes "surplusage."  Defendants incorrectly rely on case law interpreting entirely different statutory language and ignore the actual legislative intent for enacting both the *CAN SPAM Act* and the *California Business and Professions Code* §17529.5.

Defendants appear to argue that adverse affect requires that the Plaintiff be able to calculate incurred incremental money losses in order to plead an adverse affect.  Neither the plain language of the *CAN SPAM Act* or recent case law support this argument.

Defendants have attempted to shift the burden of proof regarding solicitation of emails without providing evidence to the contrary, while evidence that the emails are unsolicited was produced.  This is directly contrary to the standard for summary judgment.

Defendants attempt to argue that statutory damages and punitive damages are the same and apply case law relating to punitive damages to this SPAM case.  Defendants have misinterpreted the law of remedies and are wrong in their application of the cited cases to a SPAM case for statutory damages.

Defendants have filed a frivolous motion based on ignoring evidence and a poor reading of the law.  The court should deny Defendants' motion for summary judgment.

**STATEMENT OF FACTS**

**1.      Plaintiff is an Internet Access Provider (hereafter IAP or ISP).**

Plaintiff is an Internet Access Provider as defined in **15 *USC* 7702(11)**.  Plaintiff alleged this

fact in his complaint.  (Complaint ¶ 8)  Plaintiff advertises himself as the "ISP to the Eureka area." (Exhibit A to Declaration of Richard E. Grabowski [hereinafter "REG"], Deposition of Phillips [hereinafter "Phillips"] Pg. 15, L. 20–25).  Plaintiff is an ISP and has provided internet service for approximately ten years.  (Exhibit A to REG, Phillips Pg. 15, L. 20–25, Pg. 17, L. 2-6).  Plaintiff produced the 5600 plus emails sent to his customers by Defendants and their affiliates as part of a supplemental disclosure on or about December 5, 2006.  (Exhibit B to Declaration of REG).

**2.     Plaintiff has demonstrated that the emails were sent on behalf of Defendants.**

Netblue, Inc., maintains PO Box 390520, Mountain View, CA  (Exhibit C to Declaration of REG).  4365 of the 5611 messages produced contain this address.  (Para. 3 of Declaration of David Marshall).  Defendant Netblue owns the following domain names and uses the domain names in their marketing materials:

> MarketSurveyGroup.com
> InternetOpinionGroup.com
> Pays2shop.com
> Gadgetcity.com
> Everyfreegift.com
> Bigwin.com
> Yourgiftcards.com
> Freepinkgifts.com
> Direct-edu.com

(See Exhibit D to Declaration of REG, Whois reports for domain names)

The Whois information indicates the registered owner of the domain names is YFdirect.  YFdirect is the predecessor corporation to Netblue, Inc.  (See Exhibit E to Declaration of REG, Deposition of Scott Rewick P. 19 L. 21 – 25).  Defendants have admitted that they own most of these names, the associated web sites and that they use the names in their copyrighted materials. (See Exhibit F to Declaration of REG – Deposition of Derek Pilch [hereinafter "Pilch"] Pg. 171 L. 4 – P. 173 L. 4.).  Derek Pilch admitted in deposition testimony that the emails presented appear to contain Netblue's copyrighted advertisement materials.  (Exhibit F to REG, Pilch, Pgs. 171-173).

Many of the 5611 emails contain these marketing names,  that is  the names  appear as follows:

> MarketSurveyGroup appears in 1433 of the emails;
> InternetOpinionGroup appears in 298 of the emails;

Pays2shop appears in 327 emails;
Gadgetcity appears in 183 emails;
Everyfreegift appears in 411 emails;
Bigwin appears in 1268 emails;
Yourgiftcards appears in 286 emails;
Freepinkgifts appears in 4 emails;
Direct-edu appears in 17 emails.

(See Para. 4 to Declaration of David Marshall)

Example emails containing each of the marketing names and PO Box 390520 are included in Exhibit G to Declaration of REG).  If the unsubscribe link is clicked, it generally opens a DNS unsubscribe page for Netblue/YFDirect.  (for example see Exhibit H to Declaration of REG).  If the product link is clicked it generally opens a Netblue owned website, such as Internetopiniongroup.com.  (for example see Exhibit I to Declaration of REG).  Many of the links in these emails are no longer active, Plaintiff has provided all of the emails that have been printed out in a supplementary disclosure.  (See Exhibit J to Declaration of REG).

In discovery disclosures Plaintiff has demonstrated that the emails contained advertisements on behalf of Defendant Netblue.  (Exhibit K to REG, Supplemental Responses to Defendants Interrogatory 6 and 7).

**3.**   **Plaintiff has demonstrated that the emails contain false and misleading header information.**

Defendants claim in their Motion for Summary Judgment that Plaintiff has no admissible evidence of the claim that the emails contain false header information or misleading subject lines. Defendants' Motion for Summary Judgment P.9, L.12.  This is a serious misrepresentation of the evidence produced to Defendants in this case.  First plaintiff produced 5611 emails to Defendants. (Exhibit B to Declaration of REG).  These emails are documents and they speak for themselves.

On or about August 25, 2006, Plaintiff delivered to Defendants a supplemental response to Defendants Interrogatories that contained 10 examples of emails containing false header information and misleading subject lines with a detailed explanation of why each email header was false and each subject line misleading, with supporting evidence.  This supplemental response was ordered in this form by Judge Laporte in her discovery Order of August 3, 2006, Docket 40.  (Exhibit K to REG).  This response was verified by Plaintiff, Ritchie Phillips, the verification is included with the

1  proof of service in Exhibit K.

2      Expert Witness Jeffrey Posluns has provided evidence that these emails contain false header

3  information and misleading subject lines.  Defendants have filed Plaintiff's entire Expert Disclosure

4  in the Declaration of Jeffrey K. Riffer in Support of Defendants' Motion to Strike Plaintiff's Expert

5  Witness Report and Testimony – Docket 160 Filed 12/29/06 and the supporting Declaration of Paul

6  A. Kroeger in Support of Administrative Motion to Seal Certain Documents, Docket 161, filed

7  12/29/06 – Exhibit A filed manually.  Plaintiff will rely on these filings here to avoid re-filing these

8  large documents.  See Exhibit I to Declaration of Jeffrey K. Riffer (hereafter "JKF") – P. 7 L. 12 –

9  P.8 L.10, wherein Mr. Poslun opines that the "emails contain false header information" and P. 8 L.

10  11 – P. 89 L. 5.

11  **4.    Plaintiff has proved evidence that the emails were not solicited.**

12      Plaintiff has provided information about email accounts receiving Defendants' SPAM at his

13  service that have <u>never been active</u> or have been <u>inactive for years</u>.  (Exhibit L to REG, Response to

14  Defendants Interrogatory 8 [previously provided to Defendants and the Court on confidential CD]).

15  Plaintiff's attorney has attempted to explain to Defendants' attorney how these emails represent

16  proof that the SPAM emails were unsolicited and proof that a directory harvest was conducted to

17  gather these emails accounts.  (Exhibit L to REG, Response to Interrogatory 9).

18      Also during the relevant period Defendant Netblue was receiving constant complaints from

19  customers stating they had never signed up for solicitations or emails from Defendants and asking to

20  be removed.  (Exhibit M to REG).

21  **5.    Defendants knew or consciously avoided knowing they were hiring known**
22  **spammers and that those entities were using SPAM.**

23      Plaintiff has discovered that several of Netblue's affiliates have been identified as active

24  spammers.  (Exhibit 1 to Declaration of JKR in support of Motion to Strike Posluns, Posluns

25  Disclosure P. 10 L. 9 – P. 17 L. 22, Opinons J – N and supporting exhibits.  Redacted items are

26  found in Exhibit A to Declaration of  Paul A. Kroeger, filed under seal, in support of Motion to

27  Strike Posluns).

28      Defendants also admitted that they do not know how many emails their affiliates send, or to

1  whom the emails are sent.  (Declaration of Derek Pilch in Opposition to Plaintiff's Motion to

2  Compel filed July 11, 2006, Docket#26, ¶5).  Defendants admitted that some of the affiliates have

3  not agreed to Netblue's affiliate agreement, but are still affiliated with Netblue.  (Exhibit F to REG,

4  Pilch Pg. 122, L. 18- Pg. 123, L. 9).  Defendants have provided no proof that any of its affiliates

5  actually agreed to the affiliate agreement, even though Plaintiff has requested this information

6  several times and it was ordered by the court in Judge Laporte's orders of August 3, 2006 and

7  November 21, 2006.  Defendants did produce a list of their affiliates, apparently produced from

8  their software, supposedly as proof of affiliate contracts.  (Exhibit N to Declaration of REG).  This

9  exhibit is being submitted to the Court under a Request to File Under Seal as Defendants maintain

10  their affiliates' names are confidential.

11       Taken together, this evidence indicates that that Defendants either knew or consciously

12  avoided knowing that they were contracting with spammers to send SPAM.

13  **6.**  **Plaintiff was adversely affected by Defendants' SPAM.**

14       Plaintiff has shown that the 5611 emails were sent by Netblue and/or by Netblue's affiliates

15  on Netblue's behalf.  Plaintiff has shown that he received the emails at his protected computer, by

16  producing the emails.  Plaintiff has described the adverse affect he suffered from SPAM including

17  the 5611 emails from Netblue.  (Exhibit A to REG, Phillips Pg. 96, L. 5-15, Pg. 98, L. 13–19, Pg.

18  105, L.17–25, Pg. 106, L 1-12).  To understand Mr. Phillips' answer to the question of adverse

19  affect, in context, it is necessary to read the entire testimony of Mr. Phillips from page 94 through

20  page 107.  A complete reading of this testimony indicates that Mr. Phillips suffered significant

21  adverse affect in the form of: hardware, software and network expenses; time and effort; adverse

22  customer reactions; and loss of business.  (Exhibit A to REG, Phillips Pgs. 94–107).

                                      **ARGUMENT**

23  **1.**    **Legal Standard for consideration of a Motion for Summary Judgment.**

24       The court is authorized to find summary judgment under ***FRCP*** Rule 56(c).

25       The moving party must demonstrate the absence of a genuine issue of material fact. ***Celotex***

26  ***Corp. v. Catrett***, 477 U.S. 317 at 323 (1986).  The moving party must point out to the Court that

27  there is an absence of evidence to support the non-moving party's case. ***id***. at 325.

28

The non-moving party must then: "designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324.  In a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendants have discussed four separate issues supporting their contention that violations of the *CAN SPAM Act* and *California Business and Professions Code* §17529.5 are improper as a matter of law.

Plaintiff will respond to each issue separately.  Plaintiff has provided significant evidence of the facts in this case, beyond what are required for this response.  These facts represent a prima facia case, however, Plaintiff will not discuss all of the issues in a prima facia case.

Defendants, citing *Celotex Corp.,* argue that Plaintiff now bears the burden of showing competent evidence of each element of Plaintiff's claim.   (Defendants Motion for Summary Judgment P. 4, L 1 – 10).  This implies that Plaintiff must therefore present evidence and argue every portion of his case to survive summary judgment.  This is a misreading of the Courts decision. The Court states:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
> *Celotex Corp. v. Catrett*, 477 U.S. 317 at 323 (1986)

Therefore, Plaintiff will direct his response to only those issues presented by Defendants.

## 2.    Legal Standard for evidence at summary judgment.

Defendants also refer to "admissible" evidence without defining what the court should consider at summary judgment.

In *Celotex Corp. v. Catrett*, 477 U.S. at 324, the Court states that they did not mean to imply that evidence must be submitted in a form admissible at trial.  Instead any of the kinds of evidence listed in *FRCP* Rule 56(c) are acceptable.  This includes "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"  *FRCP* Rule 56(c) and

1   *Celotex Corp. v. Catrett*, 477 U.S. at 323 - 324.

2       Plaintiff only makes this point because Defendants have apparently completely ignored both

3   Plaintiff's and Defendants' discovery responses in making their motion.

4       As to the disclosure of Plaintiff's expert, Jeffrey Posluns, Defendants argue that it is not

5   admissible because it does not meet the standards of *FRCP* Rule 26, in that it is not sufficient as to

6   "basis and reasons."  Defendants are incorrect and this has been argued in Plaintiff's Opposition to

7   Defendant's Motion to Strike Jeffrey Posluns report and testimony.  They are also incorrect as to the

8   standard for admissible evidence at summary judgment.

9       The court in *Bulthuis v. Rexall Corp.*, 789 F.2d 1315 at 1318 (9th Cir. 1985) concluded that:

10          "Expert opinion is admissible and may defeat summary judgment if it
11          appears the affiant is competent to give an expert opinion and the
            factual basis for the opinion is stated in the affidavit, even though the
12          underlying factual details and reasoning upon which the opinion is
            based are not."

13      Defendants argue that Mr. Posluns has not provided adequate "basis and reasons" to support

14  his opinions, per *FRCP* Rule 26(c).  Mr. Posluns is imminently qualified to provide opinion

15  evidence in this matter.  (See Exhibit 1 to Declaration of JKR in support of Motion to Strike

16  Posluns, Exhibit A Posluns CV).  Plaintiff further discusses Mr. Posluns' qualifications as to most

17  of his opinions in Plaintiff's Opposition to Defendant's Motion to Strike Mr. Posluns' report and

18  testimony.

19      In every opinion Mr. Posluns makes in his disclosure he provides exhaustive facts to support

20  his opinions.  (See Exhibit 1 to Declaration of JKR in support of Motion to Strike Posluns, Posluns'

21  Disclosure and supporting exhibits).   So whether or not Mr. Posluns has provided sufficient

22  reasoning to support his opinions, he has provided sufficient facts.

23      Therefore, Mr. Posluns' Declaration and Disclosure are admissible for summary judgment.

24  **3.    Plaintiff was adversely affected by Defendants' SPAM emails.**

25      This is a case of first impression for the court as to the actual definition or legislative intent

26  regarding "adverse affect" in 15 *USC* 7704(a).   The drafters of the *CAN SPAM Act* did not define

27  adverse affect anywhere in the statute.  This indicates that they thought the term would be easily

28  understood, or thought it was unimportant, or were afraid to define the term because the definition is

difficult and they wanted to avoid error – leaving the definition up to the court.  Plaintiff argues that there are multiple possible definitions of the term, but under any definition Plaintiff has provided sufficient evidence to show an issue of material fact that must be left to a trier of fact.

Defendants argue that the term "adverse affect" is not suplusage or a nullity.  Plaintiff has not argued that "adverse affect" is surplusage.  Instead, Plaintiff has argued that the definition of "adverse affect" in the **CAN SPAM Act** has only been described in one prior decision, that of **Hypertouch, Inc. v. Kennedy-Western University**, Slip Copy, 2006 WL 648688 at 4 (N.D.Cal. 2006), and that Plaintiff has provided evidence sufficient to support adverse affect under that decision.  However, since this a case of first impression, Plaintiff will demonstrate that he has provided sufficient facts to support "adverse affect" under any precedent definition.

After arguing that "adverse affect" is not surplusage, Defendants incorrectly rely almost entirely on **Doe v. Chao**, 540 U.S. 614 (2004).  Defendants argue that the Court has decided emphatically that a Plaintiff in a tort case must suffer actual damages to receive statutory damages.  The Court in **Chao** held that the **Privacy Act**'s (5 **USC** § 552a(g)(4)) $1,000 minimum damage award was limited to "a person entitled to recovery" and that only those who sustained some actual damages were "entitled to recovery." **Chao**, 540 U.S. at 615.  The Court was in fact arguing that "a person entitled to recover" was a person who had suffered actual damages.  The Court based this decision on the fact that the language "a person entitled to recover" referred to the actual damages language found in the same sentence.  This analysis was used recently to distinguish the Court's decision in **Chao**.  In **In re Hawaiian Airlines, Inc.**, --- B.R. ----, 2006 WL 2263891 (D.Hawai'i,2006) (a courtesy copy for the Court is enclosed with the Opposition papers)  the court argued that the differences in language in the **Stored Communications Act** (18 **U.S.C.** § 2707(a) at issue in **In re Hawaiian Airlines**) though similar was different from the language of the **Privacy Act**.  The court therefore held that the decision in **Chao** was not instructive in applying statutory damages to the **Stored Communications Act**.

The language in the **Stored Communications Act** is very similar to the language in the **Privacy Act**.  Both statutes, although in different context, contain the language regarding "a person entitled to recover" and actual damages.  The actual text of **The Privacy Act** at 5 **U.S.C.** §

552a(g)(4) is:

> (4)    In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--
>
> > (A)    actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and …

The language of ***The Privacy Act*** does not refer to statutory damages.  The $1,000 is clearly tied directly to the entitlement of actual damages and sets a minimum for actual damages.

The language of The ***CAN SPAM Act*** is not similar to the ***Privacy Act*** and is specifically described as statutory damages:

> (1)    Action authorized
>
> A provider of Internet access service adversely affected by a violation of section 7704(a)(1) of this title, 7704(b) of this title, or 7704(d) of this title, or a pattern or practice that violates paragraph (2), (3), (4), or (5) of section 7704(a) of this title, may bring a civil action in any district court of the United States with jurisdiction over the defendant--
>
> > (A)    to enjoin further violation by the defendant; or
> >
> > (B)    to recover damages in an amount equal to the greater of--
> >
> > > (i)    actual monetary loss incurred by the provider of Internet access service as a result of such violation; or
> > >
> > > (ii)    the amount determined under paragraph (3).

15 **USC** 7706(g)(1).

> (3)    Statutory damages
>
> (A)    In general
>
> For purposes of paragraph (1)(B)(ii), the amount determined under this paragraph is the amount calculated by multiplying the number of violations (with each separately addressed unlawful message that is transmitted or attempted to be transmitted over the facilities of the provider of Internet access service, or that is transmitted or attempted to be transmitted to an electronic mail address obtained from the provider of Internet access service in violation of section 7704(b)(1)(A)(i) of this title, treated as a separate violation) by--
>
> > (i)    up to $100, in the case of a violation of section 7704(a)(1) of this title; or

(ii)    up to $25, in the case of any other violation of section 7704 of this title.

15 **USC** 7706(g)(3).

There is no similarity of the language in the ***CAN SPAM Act*** to the language of the ***Privacy Act***.  There is no reference to "a person entitled to recovery" in the ***CAN SPAM Act***.  The language is clearly labeled as "statutory damages".  There is a clear break between 15 ***USC*** 7706(g)(1)(B)(i), describing actual damages, and 15 ***USC*** 7706(g)(1)(B)(ii), directing the reader to statutory damages, and the word "or" is inserted.

Clearly the Court in ***Doe v. Chao***, 540 U.S. 614 (2004) based its decision on the language of the ***Privacy Act*** that directly related actual damages to a minimum recovery.  There is no minimum recovery defined in the ***CAN SPAM Act*** language.

Therefore, the decision in ***Doe v. Chao***, 540 U.S. 614 (2004) is not instructive in any manner to interpreting the language of 15 **USC** 7706(g).  Therefore, Defendants' argument that allowing recovery for adverse affect without a showing of actual damages would improperly make the term "adverse affect" surplusage is not supported by the case cited.

However, what is important is that Plaintiff did suffer adverse affect and has so testified.

Therefore, determining a definition of the term "adverse affect" is key to determining if the facts presented are sufficient.

In a recent case ***Campos v. ChoicePoint, Inc.***, --- F.R.D. ----, 2006 WL 2578791 at 6 (N.D.Ga. 2006) a courtesy copy is attached hereto for the Court, the court struggled with the term "adverse affect" but was only able to reach the conclusion: "It is also reasonable to assume the damages suffered by curious and adversely affected  consumers also would differ in substantial respects."

There are a multitude of cases that refer to "adverse affect" without defining the meaning of what an adverse affect entails.  They generally treat the subject as any affect out of the normal that provides a basis for initiating an action based on violation of a statute.

In other statutes, standing is granted without any actual physical harm or incremental cost. For example, the ***Americans with Disabilities Act*** provides standing to a wheelchair bound plaintiff attempting to use a public facility, such as a store, hotel or restaurant, and not being able to enter the

building because there is no entry ramp.  (See ***Pickern v. Holiday Quality Foods Inc.***, 293 F.3d 1133 at 1136 (9th Cir. 2002))  The ***Pickern*** court found that the futile gesture of attempting to enter and being physically injured was not required to establish standing; mere knowledge of the physical barrier and an ongoing desire to use the facility was all that was required.

Because there is no language in the statute or precedent case law available, the question of what constitutes actual harm to an IAP in a SPAM prosecution is at best undecided.

However, in ***Hom Sin v. Esperdy***, 239 F.Supp. 903 at 905 (D.C.N.Y. 1965) the court proposed a definition that may be applicable:

> "The Service contends that no 'legal wrong' has been suffered by anyone here. It concedes, however, that Howard Wee, the petitioner in the administrative proceedings, has been 'adversely affected' within the meaning of the Act and is endowed with standing.
>
> 'Legal wrong' has been defined as 'a wrong which directly results in the violation of a legal right.' Alabama Power Co. v. Ickes, 302 U.S. 464, 479, 58 S.Ct. 300, 303, 82 L.Ed. 374 (1938). The wrong must be either one cognizable at common law, or in violation of an interest created by the Constitution or by statute. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 152, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)."

The definition proposed by the ***Hom Sin*** court suggests that violation of the statute itself provides the adverse affect.  The ***Hom Sin*** court's language aligns with the decision in ***Pickern v. Holiday Quality Foods Inc.***, 293 F.3d 1133 at 1136 (9th Cir. 2002).

More recently a Slip case in the Northern District suggests another definition.  The court in ***Hypertouch, Inc. v. Kennedy-Western University***, Slip Copy, 2006 WL 648688 at 4 (N.D.Cal. 2006) a courtesy copy enclosed to the Court, stated:

> "As for adverse affect, Hypertouch has submitted a declaration indicating that high spam loads have caused decreased server response and crashes, led to higher bandwidth utilization, and forced expensive hardware and software upgrades. Given the thousands of spam messages that plaintiff has shown were received by its servers, this is a reasonable statement creating an issue of material fact."

This definition is supported by the actual language of the ***CAN SPAM Act***:

> "The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and

> receive such mail, as there is a finite volume of mail that such providers, businesses, and institutions can handle without further investment in infrastructure."
> 15 *USC* 7701(6)

There are at least three possible definitions that Plaintiff can suggest:

1.     The term was added and intended to statutorily create a trespass to an IAP's chattel, that is his protected computers.  Normally a trespass to chattel cannot be brought without actual damage.  However, since both the federal and state statutes define the violation and provide significant statutory penalty for each email received, it is likely that the drafter did not intend to require proof of physical damages.  If this definition is used then Plaintiff has already met the threshold defined in the statute by producing the 5611 emails received from Defendants.  This definition is supported by the language of ***Hom Sin v. Esperdy***, 239 F.Supp. 903 at 905 (D.C.N.Y. 1965), and ***Pickern v. Holiday Quality Foods Inc.***, 293 F.3d 1133 at 1136 (9th Cir. 2002).

2.     The drafter may have meant that the Plaintiff must declare adverse affect without requiring the demonstration of a literal monetary loss.  This definition is supported by the language of ***Hypertouch, Inc. v. Kennedy-Western University***, Slip Copy, 2006 WL 648688 at 4 (N.D.Cal. 2006).  If this is the requirement, Plaintiff has already met the requirement for showing a disputed issue of fact with his deposition testimony.  Plaintiff specifically stated his adverse affect in his deposition at Exhibit A to REG, Phillips Pg. 96, L. 5–15, Pg. 98, L. 13–19, Pg. 100, L. 20–23, Pg. 102, L. 20–25, and Pg. 103, L. 1–15.  Specifically at Pg. 96 L. 5 – 15 Plaintiff states:

> A.   In order to combat this e-mail, these e-mails and e-mails like them, we spent a lot of time.  We spent a lot of time with customers trying to run down false positives.  We spent a lot of time with e-mail filters, keeping them updated.  We deal with complaints all day long for the trash that ends up in people's e-mail boxes so that they can't even read valid e-mails.  We spend a lot of time and energy trying to keep this stuff out of our customers' e-mail.  And so this -- these 1,500 e-mails that -- are all part of that effort.

and again at Pg. 98 L. 13 – 19 Plaintiff states:

> A.   Once again, R&D has spent considerable time and energy on the issue of spam, of which these 1,500 are a part of, including servers and software and updates and dealing with disgruntled clients and angry clients and lost e-mails.  And there's a lot of time consumed to deal with this issue, of which these are a part of.

Plaintiff has made a reasonable statement of his adverse affect under the definition used by the ***Hypertouch*** court and therefore has created a disputed issue of material fact that should go to a trier of fact for resolution.

3.   Defendants have proposed a much narrower definition of adverse affect implying a plaintiff must show proof he has incurred additional or incremental costs directly related to only the emails received from the defendants.  However, the definition proposed by Defendants only has the effect of creating a material issue of fact that should be decided by a trier of fact.  That is, do Plaintiff's statements regarding his adverse affect regarding expenditures of time and effort meet the requirement for additional or incremental costs?

Surely, Plaintiff and Plaintiff's employee's time represent a monetary cost, incremental to the receipt of the 5611 emails.  Certainly the loss of customers represents an incremental monetary loss.  The fact that Plaintiff could not calculate this at the deposition does not mean there was no monetary loss.  It would be unreasonable to expect Plaintiff to calculate that type of cost while sitting in a deposition.

Defendant provides citations to Plaintiff's deposition of when and how his servers, network and software were upgraded.  These do not represent proof that there was no adverse affect suffered by Plaintiff.  Competent IAP managers do not wait until their network is collapsing to increase their capacity.  If Plaintiff had waited until his network was collapsing, as Defendants suggest, prior to upgrading his facilities he would lose all of his customers and be out of business.  Therefore, the statements cited by Defendants add nothing to the discussion of adverse affect.

Defendants have attempted to distort this argument and Plaintiff's testimony by presenting only part of Plaintiff's response, completely out of context.   Defendants have taken self-serving yes and no answers out of context and ignored the pages of dialog that follow, explaining or amending the answers.  For example when Plaintiff was asked specific questions, an entirely different picture was presented:

> Q.   Did you -- withdraw that.
> Did R&D Computers have to purchase any additional hardware as a result of the fact that 1,500 e-mails that are at issue in this case were sent to your server?
> A.   Well, yes.

(Exhibit A to REG, Phillips Pg. 95 L. 21 – 25, Pg. 96 L. 1).

For example, Defendants state that Plaintiff admitted "he did not spend any money on anti-spam software or other software in the five years prior to this deposition." (Defendants' Motion for Summary Judgment, Pg. 6, L. 12 – 13).  He also said:

> Q. Okay.  So did you -- are you saying that R&D Computing had to purchase additional x-Wall software?
>
> A. No.  I'm saying that I had to -- I had to purchase x-Wall software as a filter to block out these 1,500 as well as many others.

(Exhibit A to REG, Phillips Pg. 99, L. 10 - 15).

Also see Exhibit A to REG, Phillips Pg. 101, L. 13 – 25, regarding upgrading the SPAM filter server.  Also see Exhibit A to REG, Phillips Pg. 102, L. 11 – P. 103 L. 17 regarding loss of customers because of SPAM.

This is exactly the type of declaration the court described in *Hypertouch, Inc. v. Kennedy-Western University*, Slip Copy, 2006 WL 648688 at 4 (N.D.Cal. 2006) concluding that it created an issue of material fact.

Plaintiff in the succeeding pages goes on to testify as to when he made the purchases of software, hardware, and network bandwidth as reported by Defendants.  These purchases only represent assets or resources that Plaintiff considered prudent to purchase given the onslaught of SPAM and his customer demands.  All that the testimony concerning the purchases of hardware, software, and network bandwidth prove is that Plaintiff is a prudent and competent IAP manager, who anticipated his business' needs.  It is unlikely that the legislature intended to exclude an IAP just because he did not wait until he received each individual SPAM email before purchasing incremental resources.

Defendants argue that Plaintiff admitted he cannot determine the actual incremental costs from the emails. (Defendants' Motion for Summary Judgment, Pg. 6, L. 23–25).  Plaintiff is a small businessman.  While a large corporation with a sophisticated accounting or finance group could possibly create methods to allocate costs based on single events, it is simply not in the capacity of a small business to make this type of calculation.  Therefore, Plaintiff's admission is to a lack of accounting skill and capacity, not an admission there were no actual incremental costs.  Defendants

1   have again attempted to mischaracterize the testimony in a self serving manner.

2       Therefore, even if the court does accept Defendants' definition of "adverse affect", the court

3   must also find that the cited testimony, reviewed in the light most favorable to the non-moving

4   party, has only created a disputed issue of material fact.

5       Defendants references to Plaintiff's wife Diane Phillips, ex-employee Brian Small, and

6   Singleton Law Group's contractor Nick Grabowski are not relevant.  None of these persons are

7   responsible for determining this type of evidence.  Plaintiff owns and operates his business as a sole

8   proprietor.  Plaintiff has stated he suffered adverse affects and none of the statements of the

9   individuals named contradict that statement.  The fact that they may not be able to support

10  Plaintiff's statement is not determinative in any way.

11      The number of emails as a percentage of total spam received is not relevant.  Plaintiff

12  currently receives an enormous amount of SPAM each day.  This is what the legislature understood

13  and feared would happen to IAPs providing service on the Internet.  15 **USC** 7701(6).  It would

14  eviscerate the ***CAN SPAM Act*** if IAPs were not allowed to recover statutory penalties because the

15  percentage of SPAM from a SPAMMER is only a small portion of their overall SPAM.  The same

16  evisceration would occur if the IAP is made to calculate the incremental costs of each SPAM email.

17      The intent of the ***CAN SPAM Act*** is to reduce SPAM.  (15 ***USC*** 7701(b)).  The statutory

18  penalties in the ***CAN SPAM Act*** are prescribed  to prevent SPAMMERS from sending more SPAM.

19  The legislature created an enforcement mechanism specifically for the IAPs, the parties who were

20  most damaged by SPAM, and gave the enforcement mechanism teeth through statutory penalties.

21  (15 ***USC*** 7706(g)).  If the penalties are not imposed, there is no way for an IAP to stop the SPAM

22  and the SPAMMERS will feel free to continue the onslaught of SPAM.

23      Because of the nature of SPAM and SPAMMERS it is likely that any single spam attack will

24  only represent a small portion of any IAP's actual SPAM.  Therefore the percentage is not relevant.

25      Under any of the possible interpretations of the legal definition of "adverse affect" Plaintiff

26  has demonstrated he has created a disputed issue of material fact that should go to a trier of fact.

27  Plaintiff has provided evidence of adverse affect.  Finally, the Defendants propose an analysis of the

28  ***CAN SPAM Act*** that will eviscerate enforcement of the ***CAN SPAM Act*** by IAPs.   The court

1  should deny Defendants' motion.

2  **4.   Plaintiff has provided sufficient facts proving the emails were unsolicited in violation of *California Business and Professions Code* §17529.5.  Defendants have failed to provide any evidence to the contrary.**

3

4  Defendants complain that Plaintiff has failed to provide any evidence that the emails at issue

5  were unsolicited and therefore there is no violation of ***California Business and Professions Code***

6  §17529.5.

7  Plaintiff has provided evidence sufficient to establish a prima facia case for violation of the

8  ***California Business and Professions Code*** §17529.5.  Specifically Plaintiff has provided evidence

9  that the emails at issue were unsolicited.  Defendants have failed to provide any evidence to counter

10  Plaintiff's prima facia case and instead are trying to shift the burden to Plaintiff to provide further

11  evidence based on mere allegations.

12  ***California Business and Professions Code*** §17529.5(a) states that it is illegal for anyone to

13  advertise through an email advertisement sent from California or to a California email address,

14  under any of the following circumstances: (1) the email contains a third party's domain without their

15  permission; (2) the email contains false header information; (3) the email advertisement has a

16  subject line that would mislead the recipient about a material fact regarding the contents or subject

17  matter of the message.

18  ***California Business and Professions Code*** §17529.5(b)(1)(A)(i) provides authority for an

19  electronic mail service provider to bring an action.   As established above Plaintiff provides

20  electronic mail services to his internet service customers and therefore is authorized to bring this

21  action.

22  Defendants argue that the terms within the damages clause of ***California Business and***

23  ***Professions Code*** §17529.5(b)(1)(B)(ii) Liquidated Damages create an additional requirement to

24  show that the emails were "unsolicited."    Plaintiff will demonstrate that they have produced

25  significant evidence that the emails were unsolicited.

26  ***California Business and Professions Code*** §17529.1(o) defines "Unsolicited commercial e-

27  mail advertisement" as a commercial email advertisement that:  (1) the recipient has not provided

28  direct consent to receive; and (2) the recipient does not have a preexisting or current relationship

1    with the advertiser.

2    **California Business and Professions Code** §17529.1(d) defines direct consent as:  "means

3    that the recipient has expressly consented to receive e-mail advertisements from the advertiser,

4    either in response to a clear and conspicuous request for the consent or at the recipient's own

5    initiative."   This definition means that the potential recipient must have directly consented to the

6    <u>advertiser</u> to be solicited.  In this case that is Defendant Netblue.

7    Defendants state that Plaintiff has provided no evidence that the e-mails were "unsolicited."

8    (Defendants' Motion for Summary Judgment P. 8 L. 11 -12).  Defendants have flagrantly misstated

9    the facts of this case.

10   Plaintiff has provided Defendants with various email accounts, that received some of the

11   emails at issue, that have not been active at any time when Netblue/YFDirect was in existence.

12   (Exhibit L to REG, Response to Defendants Interrogatory 8, also see Exhibit A to Declaration of

13   Carl Scoles).   Netblue/YFDirect was incorporated in January 2002.   (See Exhibit O to REG)

14   Several of the email accounts (See Exhibit E to REG, Response to Interrogatory 8) produced by

15   Plaintiff were not and have not been active during Netblue's existence.   Therefore, it is impossible

16   for anyone to have validly solicited emails using these email accounts.

17   What's more, Plaintiff has demonstrated using Defendants' own customer service files, that

18   Defendants receive regular complaints that email recipients are receiving unsolicited emails.  (See

19   Exhibit M to REG).  Many letters state that the sender has tried to un-subscribe – several times, that

20   the emails are unsolicited, and that they continue to receive daily emails from Netblue's sites.  Some

21   of these customer service letters appear almost desperate in an attempt to stop the SPAM.  This

22   indicates a pattern and practice of using unsolicited emails to procure profiles and make sales.

23   Defendants were ordered by the court in Judge Laporte's August 3, 2006, discovery Order

24   and again in the November 23, 2006, discovery Order to produce their opt-in list.  In the November

25   23, 2006, discovery Order, Judge Laporte ordered the parties to agree on an independent third party

26   to perform the work of searching Defendants' opt-in database.  Defendants were ordered to pay the

27   costs.  As of the drafting of this Opposition paper, Defendants have failed to sign the contract with

28   the vendor agreed to by the parties.  (see Exhibit P to Declaration of REG).

Therefore, Plaintiff has requested the opt-in information, Defendants have been ordered to deliver the opt-in information, and <u>nothing</u> has been delivered.

Failure to produce evidence "create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered…" *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 at 705 (1982).  In this case Defendants have failed to produce any proof that anyone has solicited their advertisements.

The citation to Plaintiff's deposition testimony that Defendants rely on, does not contradict the evidence previously produced.  Mr. Phillips was only confirming that he has not asked his customers if they signed up or didn't sign up with Netblue.  (Exhibit A to REG, Phillips Pg. 42, L. 3–17 and Pg. 96, L. 16–Pg. 98, L. 9).  Defendants' are attempting to force Plaintiff to identify his customers so that Defendants may then harass Plaintiff's customers.  Alternatively, Defendants want Plaintiff to harass his own customers in order to defend his position, ultimately having to produce his customers as witnesses.  This has been a tactic used in other spam prosecutions to get the plaintiff to withdraw.  It has also been a tactic of other spammers to resist giving up any "opt-in" evidence, since it usually does not exist or is inadequate as a defense.

In essence all that Defendants have done in their motion: is ignore the evidence provided by Plaintiff; allege that Plaintiff's complaint allegations are not true; and refuse to obey the court's orders compelling discovery.

Therefore, Plaintiff has provided sufficient evidence that Defendants SPAM emails were unsolicited.  The court should deny Defendants Motion.

**5.     Plaintiff has provided extensive evidence that the emails at issue contain false headers and misleading subject lines in violation of the *CAN SPAM Act* and *California Business and Professions Code* §17529.5.  Defendants have provided no contrary evidence.**

Defendants argue that if Defendants' Motion to strike Plaintiff's Expert witness is successful that Plaintiff has produced no evidence that the emails at issue contain false headers or misleading subject lines.  Defendants are incorrect for two separate reasons.  First, Defendants have ignored the significant evidence produced during discovery that is admissible at summary judgment.  Second, even if Mr. Posluns' report is found insufficient it still is admissible at summary judgment under

1 current 9th Circuit precedent.

2      The *CAN SPAM Act* and *California Business and Professions Code* §17529.5 both define

3 as an element of a violation the sending of emails with false header information.  (15 *USC*

4 7704(a)(1) and *California Business and Professions Code* §17529.5(a)(2)).  In addition both

5 statutes define a violation for the use of misleading subject lines.  (15 *USC* 7704(a)(2) and

6 *California Business and Professions Code* §17529.5(a)(3)).  Plaintiff has complained of false

7 header and misleading subject line violations under both statutes.  (Complaint).

8      Defendants argue that Plaintiff has provided no other evidence to support the claim of false

9 header information or misleading subject lines in the subject emails.  Defendants have ignored or

10 forgotten the substantial discovery responses, ordered by the court, and produced by Plaintiff

11 providing proof of false headers and misleading subject lines.

12      First, the Defendants ignore the 5611 emails produced by Plaintiff.  These emails are

13 documents and speak for themselves.  They contain the headers and subject lines at issue.  Even

14 without further evidence these emails provide a disputed issue of material fact.  Whether or not the

15 headers are false or the subject lines misleading is ultimately a decision that should be left to the

16 trier of fact.

17      As discussed above evidence admissible at summary judgment includes: "the pleadings,

18 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"

19 *FRCP* Rule 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. at 323 - 324.

20      On August 3, 2006, Judge Laporte ordered: "As to Interrogatories Nos. 6 and 7, Plaintiff

21 must select ten representative emails and explain specifically how each email violates the CAN-

22 SPAM Act and California Business & Professions Code section 17529.5." (Docket 40, P. 2, L. 22 –

23 24).  On August 25, 2006, Plaintiff produced to Defendants responses to Defendants' Interrogatories

24 numbers 6 and 7, ten representative emails with detail explanations of how each email contained

25 false header information and misleading subject lines in violation of both statutes.  (Exhibit K to

26 Declaration of REG).  This production includes detail explanations and the underlying evidence

27 showing conclusively that the 10 representative emails contained false header information and

28 misleading subject lines.

1    For example, In email #1 an explanation is provided of why the header information is false

2 and why the subject line is false and misleading in violation of the **CAN SPAM Act**.  (Exhibit K to

3 Declaration of REG P. 3 L. 21).   The email sender account is gibberish obviously generated by a

4 computer program.   The IP address that the email was received from is owned by Level 3

5 Communications.   The domain name is registered to a company in Kenya, although the email

6 appears to have originated in the U.S. at a Level 3 Communications server.   The email was sent on

7 behalf of Netblue because it contains nothing but an advertisement for "MarketSurveyGroup", and

8 contains a 2004 copyright notification for "MarketSurveyGroup".  (Exhibit K to Declaration of REG

9 P. 3 L. 21 – P. 4 L. 18).   Supporting evidence from the ICANN registry is provided for the IP and

10 domain name registrations.   This evidence clearly presents facts that indicate the header information

11 is false and represent an issue of material fact for a trier of fact.

12    The subject line in Email #1 states "Test out this new T-Mobile Sidekick and keep it."   In

13 large text the advertisement within Email #1 states "Yours…Free*" referring to a picture of the T-

14 Mobile Sidekick.  (Exhibit K to Declaration of REG P. 4 L. 19 – P. 5 L. 11).   If the recipient clicks

15 on the "Click here to Claim" button they are taken to Netblue's site where they must provide

16 detailed personal profile information and sign up for various offers to receive their supposedly free

17 gift.   Defendants have admitted that this is the normal mode of operation for their web sites.

18 (Exhibit F to Declaration of REG P. 215 L. 14 – P. 229).   This clearly provides facts that support

19 Plaintiff's contention that the subject lines are false and misleading and represent an issue of

20 material fact for a trier of fact.

21    Why Email #1 is in violation of the **California Business and Professions Code** § 17529.5

22 is discussed starting on P. 27 of Exhibit K to Declaration of REG.   Ten separate emails are

23 discussed in detail in Exhibit K to Declaration of REG, describing why each is in violation of both

24 the **CAN SPAM Act** and **California Business and Professions Code** §17529.5, with supporting

25 evidence.

26    No objection was made to this material and no mention was made of the materials in

27 Defendants subsequent Motion to Compel, filed on September 25, 2006, Docket 67.  This document

28 consists of almost 200 pages of detailed explanation and evidence.  Defendants have apparently

1   decided to ignore this evidence in making their motion.

2      Therefore, Defendants are clearly wrong in their assertion that no evidence beyond that of

3   Plaintiff's expert witness has been produced.

4      As discussed above the court in *Bulthuis v. Rexall Corp.*, 789 F.2d 1315 at 1318 (9th Cir.

5   1985) decided that if an expert was qualified and provided the facts for his opinion, then the expert's

6   opinion is admissible at summary judgment.  Mr. Posluns is eminently qualified to express opinions

7   in this case, especially concerning false header information and misleading subject lines in SPAM

8   emails.  (See Exhibit 1 to Declaration of JKR – Exhibit A to Posluns Disclosure – Posluns' CV).

9   Mr. Posluns provided extensive facts supporting his opinions in his report.  (See Exhibit 1 to

10  Declaration of JKR – Posluns Disclosure – Para III Information Reviewed, Opinion E on P. 7 L. 11

11  – P. 8 L. 10, and Opinion F on P. 8 L. 11 – P. 9 L. 5).

12     The court in *Bulthuis v. Rexall Corp.*, 789 F.2d 1315 at 1318 (9th Cir. 1985) specifically

13  states that the "underlying factual details" are not necessary.  Therefore, Defendants contention that

14  the detail of identifying each actual email used in creating the opinion, is not relevant or required

15  under *Bulthuis* at summary judgment.

16     Mr. Posluns' Opinion E states that the emails reviewed contain false header information.

17  (See Exhibit 1 to Declaration of JKR – Posluns Disclosure - Opinion E on P. 7 L. 11 – P. 8 L. 10).

18  Mr. Posluns' Opinion F states that the emails contain misleading subject lines.  (See Exhibit 1 to

19  Declaration of JKR – Posluns Disclosure - Opinion F on P. 8 L. 11 – P. 9 L. 5).

20     Therefore, since Mr. Posluns opinions are admissible at summary judgment no matter what is

21  decided as to Defendants' Motion to strike, those opinions also create an issue of material fact.

22     Therefore, the court should deny Defendants' Motion.

23  **6.     Defendants legal argument that Plaintiff's request that statutory penalties are improper without a reasonable relationship to actual damages is based on a faulty legal premise.**

24

25     Defendants argue that Plaintiff should not be allowed the applicable statutory penalties

26  because there is no reasonable relationship to Plaintiff's actual damages.  Defendants base this legal

27  argument on cases involving punitive damages.  There is no legal basis for applying the results of

28  punitive damages cases to statutory penalty cases.  There is no legal precedent for limiting statutory

penalties in contradiction to the actual language of the statutes.

As the court notes in its Order of December 12, 2006, citing **Nintendo v. Dragon Pacific International**, 40 F.3d 1007, 1011 (9th Cir. 1994) the 9th Circuit has decided that statutory damages can either be meant to compensate a plaintiff or penalize a defendant.  Further the court has decided that when statutory damages are penalties they "serve a completely different purpose than actual damages." **Id.**

As discussed by the Court in its Order of December 12, 2006, the court has decided that the statutory damages prescribed by the **CAN SPAM Act** are a penalty.

Therefore they are completely different from actual damages.

The Court also found that the liquidated damages prescribed in the **California Business and Professions Code** §17529.5 are penalties, relying on **Beeman v. Burling**, 21 Cal.App.3d 1586, 1589 (Cal. App. Ct. 1990), **Turnbull & Turnbull v. ARA Transportation, Inc.**, 219 Cal.App.3d 811, 826 (Cal. App. Ct. 1990) and the statutory language of **California Business and Professions Code** §17529.5.  Further relying on the language of  **Beeman v. Burling**, 21 Cal.App.3d 1586, 1589 (Cal. App. Ct. 1990) the California court has decided that statutory damages are not related to actual damages: "Statutory damages may either take the form of penalties, which impose damages in an arbitrary sum, regardless of actual damages suffered,…"

Therefore, the statutory damages allowed in 15 **USC** 7706(g) and the liquidated damages allowed in **California Business and Professions Code** §17529.5(b) are penalties and are not subject to a relationship to actual damages.

Defendants' citations to **In re: The Exxon Valdez (Bakers v. Exxon Mobil Corp.)**, - F.3d - , 2006 U.S. App. Lexis 310503, at 37 – 38, 2006 WL 3755189, (9th Cir. 2006) a courtesy copy of which is enclosed to the Court, **State Farm Mut. Auto. Ins. Co. v. Campbell,** 538 U.S. 408 (U.S.,2003), and **Cooper Industries, Inc. v. Leatherman Tool Group, Inc.**, 532 U.S. 424 (U.S.Or.,2001) are not instructive as all of these cases dealt with "punitive damages."  Defendants make no attempt at relating how these decisions concerning punitive damages relate to an award of statutory damages other than they both are referred to as penalties.

Statutory damages are penalties enacted by the legislature as an enforcement mechanism to

support government policy.  Punitive penalties are penalties awarded by the court or a jury aimed at deterrence and retribution.  The case cited by Defendants, **State Farm Mut. Auto. Ins. Co. v. Campbell,** 538 U.S. 408 at 419 (U.S.,2003), defines for the courts the issues in deciding if and the amount of punitive damages to apply.  The court suggests five steps to determine the degree of reprehensibility:

> "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."
> **State Farm Mut. Auto. Ins. Co. v. Campbell,** 538 U.S. 408 at 419 (U.S.,2003)

These are typical issues in any tort case, however, they are not the issues in a **CAN SPAM** case.  Therefore, Defendants have provided no valid argument that statutory penalties are related to punitive penalties.

Finally, Defendants state that Plaintiff has not suffered actual damages.  As discussed above this is a misrepresentation of Plaintiff's testimony and the facts in this case.  Therefore, even if Defendants' legal arguments were appropriate, the existence of actual damages defeats their argument.

The court should deny Defendants Motion.

## CONCLUSION

On the basis stated above, the court should deny Defendants' Motion for Summary Judgment.

**SINGLETON LAW GROUP**

Dated:       January 25, 2007                    _____/s/ Jason K. Singleton_____
                                                 Richard E. Grabowski
                                                 Jason K. Singleton, Attorneys for Plaintiff,
                                                 **Ritchie Phillips, dba R&D Computers**