Jason K. Singleton, **State Bar #166170**
Richard E. Grabowski, **State Bar #236207**
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**lawgroup@sbcglobal.net**
**(707) 441-1177**
**FAX  441-1533**

**Attorneys for Plaintiff, R&D COMPUTERS**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RITCHIE PHILLIPS, dba R&D COMPUTERS,**<br><br>      **Plaintiff,**<br>**vs.**<br><br>**NETBLUE, INC., formerly known as YFDIRECT, INC., also doing business as MARKETSURVEYGROUP.COM, also dba EASYEZSTREET.COM, also dba MINGLYCOMP.INFO, also dba EVERYFREEGIFT.COM, KENNETH CHAN, aka KENNETH CHEN, SCOTT REWICK, DEREK PILCH, FREDRICK HARMAN, and DOES ONE through FIFTY, inclusive,**<br><br>      **Defendants.** | **Case No.  C-05-4401 SC**<br><br>**PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANTS INTERROGATORIES** |

PROPOUNDING PARTY:  Defendants, Netblue, Inc., (formerly known as YFDirect, Inc.)
                                            Kenneth Chan, Scott Rewick, Derek Pilch, and Frederick Harman

RESPONDING PARTY:    Plaintiff, Ritchie Phillips

SET NO.:                        SUPPLEMENTAL

     Plaintiff  has not completed his investigation or analysis of the facts relating to this case, has not completed discovery, and has not completed preparation for trial.   Accordingly, the responses herein given are without prejudice to Plaintiff's right to produce evidence of any subsequently discovered facts or interpretations thereof and/or to add to, modify or otherwise

change or amend the responses herein.  The information hereinafter set forth is true and correct to the best knowledge of Plaintiff at this particular time and is subject to correction for inadvertent errors or omissions, if any errors or omissions shall hereafter be found to exist. Plaintiff expressly reserves the right to supplement his responses as additional information is forthcoming through the discovery process.

Plaintiff makes the following responses to the Defendants' Interrogatories to Plaintiff.

**INTERROGATORY NO. 6:**

Please describe the respect in which each of the email messages referred to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT allegedly violates 15 U.S.C. § 7704.

**RESPONSE:**

Plaintiff supplements his response as follows:

Plaintiff has complained of violations of the CAN SPAM Act on the basis of false or misleading header information as described in 15 U.S.C. § 7704(a)(1) and violations based on deceptive subject headings as defined in 15 U.S.C. § 7704(a)(2).

15 U.S.C. § 7704 (a) (1) states:

"(1)    Prohibition of false or misleading transmission information

It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, <u>header information that is materially false</u> or <u>materially misleading</u>. For purposes of this paragraph--

(A)    header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading;

(B)    a "from" line (the line identifying or purporting to identify a person initiating the message) that accurately identifies any person who initiated the message shall not be considered materially false or materially misleading; and

(C) header information shall be considered materially misleading if it fails to identify accurately a protected computer used to initiate the message because the person initiating the message knowingly uses another protected computer to relay or retransmit the message for purposes of disguising its origin."

15 U.S.C. 5 7704(a)(2) states:

"(2) Prohibition of deceptive subject headings

It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 45 of this title)."

Plaintiff has received to date over 4500 emails at his protected server, see Exhibit L the WHOIS information for Internet Protocol block 216.101.97.0 - 216.101.97.255, ownership of these Internet Protocol addresses can be verified against the receiving Internet Protocol address included in each of the 10 emails presented in this response, indicating ownership by Plaintiff.

Plaintiff provides the following 10 emails (attached as exhibit A - J) with explanations of how each of these 10 emails violate both sections of 15 U.S.C. § 7704 (a), in compliance with the court's order of August 3, 2006.

**EMAIL # 1 (Exhibit (A))**

Email # 1 was sent supposedly by "Market Survey Groupn -- the actual return address is "GjA8G8ANL4xYJfxjyB8fG466KgG@marctrac.com." These two identifiers do not identify any actual sender. The Internet Protocol (IP) address shown as the sending address in the header information is "63.208.227.246", see the header information for Email # 1 included in Exhibit A.   This IP address is within a block owned by Level 3 Communications, see the attached WHOIS  IP report included with Email # 1.

The domain name shown in the sending address is "marctrac.com." A **WHOIS** domain name search shows that this domain name is owned by Spiral Matrix in Kenya, Africa, an

unidentifiable entity or person.  It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in order to send emails while hiding the identity of the sender) to send SPAM in violation of the CAN SPAM Act. Since it is highly unlikely that Level 3 Communications (one of the largest broadband companies in the U.S.) is in business with or allowed a SPAMMER in Kenya to use its computers this email is in direct violation of both paragraph (A) and (C) of 15 U.S.C. § 7704(a)(1). First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all. Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

This email was obviously sent for NETBLUWFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "MarketSurveyGroup.com."  It also contains the language: "MarketSurveyGroup.com is not affiliated with T-Mobile, Inc.", a disclaimer that is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by Tmobile for trademark infringement for using their name in this advertisement. "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc., see the attached WHOIS IP report included with Email # 1 for MarketSurveyGroup.com in Exhibit A.  There is no indication in the header information that this email was sent by or for YFDirect, Inc. Therefore, the header information is completely misleading as to the actual sender or more likely the procurer, NetblueNFDirect.

The subject header of Email # 1 is: "Test out this new T-Mobile Sidekick and keep it." The objective circumstances presented by this offer are that the email recipient has only to test this product and they can keep it.  The contents of the email state the T-Mobile advertised is "Yours ... Free", implying that the recipient will receive a T-Mobile Sidekick II for free. However, as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by NetblueIYFDirect, and they are told they must provide significant personal information. Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" T-Mobile. It is unclear if the email recipient, even if they follow the instructions from the advertisement,

actually ever get anything, Plaintiffs agents were never successful in their attempts. Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action. Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

\*\*Therefore, the objective circumstances of the subject header indicate that the email recipient will receive a free T-Mobile Sidekick, just by trying it.  It is clear from the evidence presented that this is absolutely not the case. It is unclear if the email recipient will ever receive anything. Therefore, the subject header is deceptive within the meaning of 15 U.S.C. § 7704 (a) (2).

Registration of a domain name requires that the registrant verify that they do not intend to use the domain name to violate the rights on any third party, as an example see Exhibit D to the Declaration of Richard Grabowski filed in support of Plaintiffs Opposition to Defendant's motion to Compel. By using the domain name "marctrac.com" to send an email with a deceptive subject line in violation of 15 U.S.C. 5 7704 (a) (2) the registrant has obtained the domain name "by means of false or fraudulent pretenses or representations" In direct violation of 15 U.S.C. § 7704 (a) (I) (A).

**EMAIL # 2 (Exhibit (B))**

Email # 2 was sent supposedly by "Market Survey Group" the actual return address is "Aisha@masruvi.com", see Exhibit B for the email and header information. These  two identifiers do not identify any actual sender. The domain name shown in the sending address is "masruvi.com".   A *WHOIS* domain name search, see Exhibit B, shows that this domain name is owned by "masruvi.com", an unidentifiable entity or person. Plaintiff subpoenaed the billing information regarding both the domain name and the drop box at 2269 Chestut St. #631, San Francisco, CA, and discovered the real owner of the domain name and drop box were: Frontline Direct, Inc., Blue Interactive, Inc., Kim Reed, John Perell, and Amanda Pauline

1  Currie.  Plaintiff has provided the results of these subpoenas to Defendant separately.  None of

2  these entities or persons are indicated as the senders of the email anywhere in the email.

3      The Internet Protocol (IP) address shown as the sending address in the header

4  information is "66.62.46.202", see the header information for Email # 2 included in Exhibit B.

5  This IP address is within a block owned by 360Networks (USA) Inc., see the attached **WHOIS**

6  IP report included in Exhibit B.  This indicates that this email was routed through 360Network's

7  servers.  It is a normal practice of SPAMMERS to use zombies (computers taken over illegally

8  in order to send emails while hiding the identity of the sender) to send SPAM in violation of the

9  CAN SPAM Act.  Since it is highly unlikely that 360Networks (one of the largest international

10  broadband companies in the world) is in business with or allowed a unknown SPAMMER to

11  use its computers this email is in direct violation of both paragraph (A) and (C) of  15 U.S.C. §

12  7704 (a) (1).  First, It provides misleading information regarding the identity of the sender, in

13  fact it does not identify the actual sender at all.   Second, it used a zombie to illegally reroute

14  the email to hide the identity of the real sender.

15      This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement

16  bearing the 2004 copyright notification for "MarketSurveyGroup.com".  It also contains the

17  language: "MarketSurveyGroup.com is not affiliated with PalmOne, Inc.", a disclaimer that is

18  obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by

19  Palm One, Inc for trademark infringement for using their name in this advertisement.

20  "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.,  see the attached

21  **WHOIS** IP report included in Exhibit A for MarketSurveyGroup.com.  There is no indication in

22  the header information that this email was sent by or for Netblue/YFDirect.  Therefore the

23  header information is completely misleading as to the actual sender or more likely the

24  procurer, Netblue/YFDirect.

25      The subject header of Email # 2 is: "\N, Test and keep this new Palm One".  The

26  objective circumstances presented by this offer are that the email recipient has only to test this

27  product and they can keep it.  The contents of the email state the PalmOne Treo 650

28  advertised is "Yours…Free", implying that the recipient will receive a PalmOne Treo 650 for

free.   However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.   Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" PalmOne Treo 650.   It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.   Plaintiff's agents were never successful in their attempts.   Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.   Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the objective circumstances of the subject header indicate that the email recipient will receive a free PalmOne Treo 650, just by trying it.   It is clear from the evidence presented that this is absolutely not the case.   It is unclear if the email recipient will ever receive anything.   Therefore, the subject header is deceptive within the meaning of  15 U.S.C. § 7704(a)(2).

Registration of a domain name requires that the registrant verify that they do not intend to use the domain name to violate the rights on any third party, as an example see Exhibit D to the Declaration of Richard Grabowski filed in support of Plaintiff's Opposition to Defendant's motion to Compel.   By using the domain name "masruvi.com" to send an email with a deceptive subject line in violation of 15 U.S.C. § 7704(a)(2) the registrant has obtained the domain name "by means of false or fraudulent pretenses or representations" In direct violation of 15 U.S.C. § 7704(a)(1)(A).

Email No 2 was sent to "bsmall@bsmall.com."   This email account does not actually exist as a live account in Plaintiff's system, it only exists as an administrative account for system administration purposes.   The only manner in which this account could have been known by anyone outside of Plaintiff's business is if it were stolen.   It is highly probable that

this email account was detected by a directory harvest or by breaking into Plaintiff's computer and stealing his company's information.   Since no outright break-in, either electronically or physically, has been detected, Plaintiff assumes this information was garnered by a directory harvest.

**EMAIL # 3 (Exhibit (C))**

Email # 3 was sent supposedly by "Razor Phone," the actual return address is "return@savings4us.info."  See Exhibit C for the email and header information.  These two identifiers do not identify any actual sender.  The name "return" when used in an email is typical of SPAMMERS who generate the email accounts by an automated means, buying domain names in bulk and then generating email accounts using unidentifiable account names.  The domain name shown in the sending address is "savings4us.info".   A ***WHOIS*** domain name search, see Exhibit C, shows that this domain name is owned by "ProtectFly.com."  "ProtectFly.com" is a service offered by "Registerfly.com" a domain name registration company.  Registerfly uses their name Protectfly as the identification information associated with the domain name, preventing anyone from actually identifying the real sender. The identity of the actual sender can only be discovered by requesting the information from Resgisterfly by subpoena.  Approximately 79% of all of the 4500 emails received by Plaintiff (see Exhibit M) in this action came through domain names issued by Registerfly and protected under their Protectfly service.   Plaintiff has subpoenaed Registerfly for the identification information regarding all of the domain names used in this spamming incident.  Plaintiff will provide the results of that subpoena when it is received.

The Internet Protocol (IP) address shown as the sending address in the header information is "216.22.59.11", see the header information for Email # 3 included in Exhibit C. This IP address is within a block owned by  ServInt Corp.., see the attached ***WHOIS*** IP report included in Exhibit C.  Servint Corp. is a defunct company in both California and Virginia. Servint Corp. was an internet access and portal company who declared bankruptcy and was subsequently sued by the U.S. Government for failure to post payroll taxes.  ***In re Servint Corp.***, 298 B.R. 579 (Bkrtcy. E.D. Va., 2003).  Notice that this action took place two years prior

to the incident period of this case.  Therefore the identification information cannot be correct, the information used to obtain the domain name is invalid.   The received information in the header information indicates that the email was sent from Launchmediaonline.com which is owned by Domains by Proxy, Inc.  Therefore the name provided (srv.launchmediaonline.com) in the sent from field of the header contradicts the IP address information (216.22.59.11 belonging supposedly to the defunct company Servint Corp.) in the same field.  Therefore, the header information contained in email No. 3 is false and misleading and is likely in violation of both paragraph (A) and (C) of 15 U.S.C. § 7704(a)(1).  First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all.  Second, it used a computer supposedly owned by a corporation that did not exist at the time of the incident and either altered the information in the header or routed the email through a zombie.

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement for "EveryFreeGift."  Unfortunately the server that the email points to no longer exists and therefore the pictures originally shown cannot be provided.  The email contains the language: "EveryFreeGift is not affiliated with Motorola Corporation," a disclaimer that is obviously intended to protect the owners of EveryFreeGift from prosecution by Motorola for trademark infringement for using their name in this advertisement, even though it tries to disguise this advertisement by referring to Motorola as "Moto®" in the advertisement. "EveryFreeGift.com" is a domain name owned by YFDirect, Inc.,  see the attached **WHOIS** IP report included in Exhibit C for EveryFreeGift.com.  There is no indication in the header information that this email was sent by or for Netblue/YFDirect.  Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect.

The subject header of Email # 3 is: "State of the art slim camera phone is on the house".  The objective circumstances presented by this offer are that the email recipient will receive a slim camera phone for free (on the house).  The contents of the email state "Claim your Moto® Razr V3 Flip Phone!", implying that the recipient will receive a Moto® Razr V3

1   Flip Phone simply by claiming it    However,  as has been demonstrated in Plaintiff's initial

2   disclosures and other discovery responses, if the email recipient is foolish enough to actually

3   click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they

4   are told they must provide significant personal information.  Further the email recipient is also

5   required to purchase and keep for up to 90 days several products in order to get their

6   supposedly "Free" Moto® Razr V3 Flip Phone.  It is unclear if the email recipient, even if they

7   follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents

8   were never successful in their attempts.  Attached as Exhibit K are reports from an Internet

9   fraud reporting website that indicate other email recipients have attempted to get their "Free"

10  prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of

11  these reports and will supplement this response with the identities and sworn statements of the

12  source of these reports if possible to show a pattern or practice by Defendants.

13      Therefore, the objective circumstances of the subject header indicate that the email

14  recipient will receive a free Moto® Razr V3 Flip Phone, just by claiming it.  It is clear from the

15  evidence presented that this is absolutely not the case.  It is unclear if the email recipient will

16  ever receive anything.  Therefore, the subject header is deceptive within the meaning of  15

17  U.S.C. § 7704(a)(2).

18      Registration of a domain name requires that the registrant verify that they do not intend

19  to use the domain name to violate the rights on any third party.  As an example see Exhibit D

20  to the Declaration of Richard Grabowski filed in support of Plaintiff's Opposition to Defendant's

21  motion to Compel.  By using the domain name "savings4us.info" to send an email with a

22  deceptive subject line in violation of 15 U.S.C. § 7704(a)(2) the registrant has obtained the

23  domain name "by means of false or fraudulent pretenses or representations" In direct violation

24  of 15 U.S.C. § 7704(a)(1)(A).

25      **EMAIL # 4 (Exhibit (D))**

26      Email # 1 was sent supposedly by "InternetOpinionGroup"  the actual return address is

27  "GjA8G8ANL4xYJfxjyB8fG466KgG@trakerstat.com."   Note also that the supposed name

28  (GjA8G8ANL4xYJfxjyB8fG466KgG) on this email is exactly the same as the name on email

No. 1 with a different domain name.  Obviously these email accounts were generated by an automated generation process after the purchase of a series of domain names. The two identifiers do not identify any actual sender.  The Internet Protocol (IP) address shown as the sending address in the header information is "63.208.227.168", see the header information for Email # 4 included in Exhibit D.  This IP address is within a block owned by Level 3 Communications, see the attached **WHOIS** IP report included with Email # 4 in Exhibit D.  The domain name shown in the sending address is "trakerstat.com."  A **WHOIS** domain name search, see Exhibit D, shows that this domain name is owned by "trakerstat.com," an unidentifiable entity or person.  Plaintiff subpoenaed the billing information regarding the drop box at 2269 Chestut St. #631, San Francisco, CA, and discovered the real owners of the drop box were: Frontline Direct, Inc., Blue Interactive, Inc., Kim Reed, John Perell, and Amanda Pauline Currie.  Plaintiff has provided the results of these subpoenas to Defendant separately.

Note that even though the name information "GjA8G8ANL4xYJfxjyB8fG466KgG" is exactly the same for emails 1 and 4, the domain name information for "trakerstat.com" from email no. 4 is exactly the same as "masruvi.com" in email no. 2.  This provides further proof that the spammer was using an automated generation tool to generate the email accounts after multiple domain name purchases.

Note also that the from IP address in emails No. 1 and 4 are owned by Level 3 Communications, but the IP address from email no. 2 is from 360Networks.  This provides further proof that the spammer was hijacking the Level 3 Communications and 360Networks computers to reroute the emails to prevent tracking.

Note also that the product in email no. 4 "Moto® Razr V3 Flip Phone!" (received on August 29, 2005) is exactly the same as in email no. 3 "Claim your Moto® Razr V3 Flip Phone!" (received on August 28, 2005), indicating that the source for this offer is not random.

None of the header information identifies Frontline Direct, Inc., Blue Interactive, Inc., Kim Reed, John Perell, Amanda Pauline Currie, or Level 3 Communications as the senders of the email.  Since it is highly unlikely that Level 3 Communications (one of the largest broadband companies in the U.S.) is in business with or allowed an unknown SPAMMER to

1  use its computers, this email is in direct violation of both paragraph (A) and (C) of  15 U.S.C. §

2  7704(a)(1).  First, It provides misleading information regarding the identity of the sender, in fact

3  it does not identify the actual sender at all.   Second, it used a zombie to illegally reroute the

4  email to hide the identity of the real sender.

5       This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement

6  bearing the 2004 copyright notification for "InternetOpinionGroup.com".  It also contains the

7  language:  "Internet Opinion Group is not affiliated with Motorola Corporation", a disclaimer

8  that is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution

9  by T-Mobile for trademark infringement for using their name in this advertisement.

10  "InternetOpinionGroup.com" is a domain name owned by YFDirect, Inc., see the attached

11  **WHOIS** IP report included with Email # 4 included in Exhibit D for InternetOpinionGroup.com.

12  There is no indication in the header information that this email was sent by or for YFDirect, Inc.

13  Therefore the header information is completely misleading as to the actual sender or more

14  likely the procurer, Netblue/YFDirect.

15       The subject header of Email # 4 is: ", Test and keep this new cell phone."  The

16  objective circumstances presented by this offer are that the email recipient has only to test this

17  product and they can keep it.  The contents of the email state the Moto® Razr V3 Flip Phone

18  advertised is "Yours…Free", implying that the recipient will receive a Moto® Razr V3 Flip

19  Phone for free.  However,  as has been demonstrated in Plaintiff's initial disclosures and other

20  discovery responses, if the email recipient is foolish enough to actually click on the

21  advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they

22  must provide significant personal information.  Further, the email recipient is also required to

23  purchase and keep for up to 90 days several products in order to get their supposedly "Free"

24  Moto® Razr V3 Flip Phone.   It is unclear if the email recipient, even if they follow the

25  instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never

26  successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting

27  website that indicate other email recipients have attempted to get their "Free" prize without

28  success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports

1  and will supplement this response with the identities and sworn statements of the source of

2  these reports if possible to show a pattern or practice by Defendants.

3       Therefore, the objective circumstances of the subject header indicate that the email

4  recipient will receive a free Moto® Razr V3 Flip Phone, just by trying it.  It is clear from the

5  evidence presented that this is absolutely not the case.  It is unclear if the email recipient will

6  ever receive anything.  Therefore, the subject header is deceptive within the meaning of  15

7  U.S.C. § 7704(a)(2).

8       Registration of a domain name requires that the registrant verify that they do not intend

9  to use the domain name to violate the rights on any third party, as an example see Exhibit D to

10 the Declaration of Richard Grabowski filed in support of Plaintiff's Opposition to Defendant's

11 motion to Compel.  By using the domain name "trakerstat.com" to send an email with a

12 deceptive subject line in violation of 15 U.S.C. § 7704(a)(2) the registrant has obtained the

13 domain name "by means of false or fraudulent pretenses or representations" In direct violation

14 of 15 U.S.C. § 7704(a)(1)(A).

15      **EMAIL # 5 (Exhibit (E))**

16      Email # 5 was sent supposedly by "$1800.00 value!" the actual return address is

17 "return@savingsfly.info."  See Exhibit E for the email and header information.  These two

18 identifiers do not identify any actual sender.  The name "return" when used in an email is

19 typical of SPAMMERS who generate the email accounts by an automated means, buying

20 domain names in bulk and then generating email accounts using unidentifiable account

21 names.  The domain name shown in the sending address is "savingsfly.info."   A *WHOIS*

22 domain name search, Exhibit E, shows that this domain name is owned by "ProtectFly.com."

23 "ProtectFly.com" is a service offered by "Registerfly.com" a domain name registration

24 company.  Registerfly and Protectfly are discussed above.  Plaintiff will provide the results of

25 that subpoena when it is received.

26      The Internet Protocol (IP) address shown as the sending address in the header

27 information is "216.22.59.12", see the header information for Email # 5 included in Exhibit E.

28 This IP address is within a block owned by  ServInt Corp.., see the attached *WHOIS* IP report

included in Exhibit E.  Servint Corp. is a defunct company and is discussed above.  Therefore the identification information cannot be correct, the information used to obtain the domain name is invalid.   The received information in the header information indicates that the email was sent from Launchmediaonline.com which is owned by Domains by Proxy, Inc.  Therefore the name provided (srv.launchmediaonline.com) in the sent from field of the header contradicts the IP address information (216.22.59.12 belonging supposedly to the defunct company Servint Corp.) in the same field.  Therefore, the header information contained in email No. 5 is false and misleading and is likely in violation of both paragraph (A) and (C) of  15 U.S.C. § 7704(a)(1).  First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all.   Second, it used a computer supposedly owned by a corporation that did not exist at the time of the incident and either altered the information in the header or routed the email through a zombie.

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement for "BigWin.com."  Unfortunately the server that the email points to no longer exists and therefore the pictures originally shown cannot be provided.  The email contains the language: "BigWin.com is not affiliated with any of the above brands," a disclaimer that is obviously intended to protect the owners of BigWin.com from prosecution by the trademark owner for trademark infringement.  "BigWin.com" is a domain name owned by YFDirect, Inc., see the attached **WHOIS** IP report included in Exhibit E for BigWin.com.  There is no indication in the header information that this email was sent by or for Netblue/YFDirect.  Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect.

The subject header of Email # 5 is: "Congratulations- Your Complimentary LG Washer/Dryer Combo is waiting."  The objective circumstances presented by this offer are that the email recipient has a LG Washer/Dryer Combo waiting for pick-up.  However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal

information.  Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" LG Washer/Dryer Combo.  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the objective circumstances of the subject header indicate that the email recipient will receive a free LG Washer/Dryer Combo, just by claiming it.  It is clear from the evidence presented that this is absolutely not the case.  It is unclear if the email recipient will ever receive anything.  Therefore, the subject header is deceptive within the meaning of 15 U.S.C. § 7704(a)(2).

Registration of a domain name requires that the registrant verify that they do not intend to use the domain name to violate the rights on any third party, as an example see Exhibit D to the Declaration of Richard Grabowski filed in support of Plaintiff's Opposition to Defendant's motion to Compel.  By using the domain name "savingsfly.info" to send an email with a deceptive subject line in violation of 15 U.S.C. § 7704(a)(2) the registrant has obtained the domain name "by means of false or fraudulent pretenses or representations" In direct violation of 15 U.S.C. § 7704(a)(1)(A).

**EMAIL # 6 (Exhibit (F))**

Email # 6 was sent supposedly by "Limited Quantity Left" the actual return address is "return@calike.info," see Exhibit F for the email and header information.  These two identifiers do not identify any actual sender.  The name "return" when used in an email is typical of SPAMMERS who generate the email accounts by an automated means, buying domain names in bulk and then generating email accounts using unidentifiable account names.  The domain name shown in the sending address is "calike.info."  A **_WHOIS_** domain name search,

see Exhibit F, shows that this domain name is owned by "ProtectFly.com."  "ProtectFly.com" is a service offered by "Registerfly.com" a domain name registration company.  Registerfly and Protectfly are discussed above.  Plaintiff will provide the results of that subpoena when it is received.

The Internet Protocol (IP) address shown as the sending address in the header information is "216.22.59.84", see the header information for Email # 6 included in Exhibit F. This IP address is within a block owned by  ServInt Corp., see the attached **WHOIS** IP report included in Exhibit E.  Servint Corp. is a defunct company and is discussed above.  Therefore the identification information cannot be correct, the information used to obtain the domain name is invalid.   The received information in the header information indicates that the email was sent from calike.info which is protected from discovery by Protectfly.com.  Therefore the name provided (srv.launchmediaonline.com) in the sent from field of the header contradicts the IP address information (216.22.59.84 belonging supposedly to the defunct company Servint Corp.) in the same field.  Therefore the header information contained in email No. 6 is false and misleading and is likely in violation of both paragraph (A) and (C) of  15 U.S.C. § 7704(a)(1).  First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all.   Second, it used a computer supposedly owned by a corporation that did not exist at the time of the incident and either altered the information in the header or routed the email through a zombie.

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement for "BigWin.com."  Unfortunately the server that the email points to no longer exists and therefore the pictures originally shown cannot be provided. The email contains the language: "BigWin.com is not affiliated with any of the above brands," a disclaimer that is obviously intended to protect the owners of BigWin.com from prosecution by the trademark owner for trademark infringement.   "BigWin.com" is a domain name owned by YFDirect, Inc.,  see the attached **WHOIS** IP report included in Exhibit E for BigWin.com.  There is no indication in the header information that this email was sent by or for Netblue/YFDirect.  Therefore the header information is completely misleading as to the actual sender or more likely the procurer,

1   Netblue/YFDirect.

2       The subject header of Email # 6 is: "Congratulations! Your Complimentary Kenmore

3   Refrigerator is pending. $2099.88 value!"  The objective circumstances presented by this offer

4   are that the email recipient has a Kenmore Refrigerator waiting for pick-up.  However,  as has

5   been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email

6   recipient is foolish enough to actually click on the advertisement, they are sent to a website

7   owned by Netblue/YFDirect, and they are told they must provide significant personal

8   information.  Further the email recipient is also required to purchase and keep for up to 90

9   days several products in order to get their supposedly "Free" Kenmore Refrigerator.  It is

10  unclear if the email recipient, even if they follow the instructions from the advertisement,

11  actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached

12  as Exhibit K are reports from an Internet fraud reporting website that indicate other email

13  recipients have attempted to get their "Free" prize without success, or only after threats of legal

14  action.  Plaintiff is pursuing the sources of these reports and will supplement this response with

15  the identities and sworn statements of the source of these reports if possible to show a pattern

16  or practice by Defendants.

17      Therefore, the objective circumstances of the subject header indicate that the email

18  recipient will receive a free Kenmore Refrigerator, just by claiming it.  It is clear from the

19  evidence presented that this is absolutely not the case.  It is unclear if the email recipient will

20  ever receive anything.  Therefore, the subject header is deceptive within the meaning of  15

21  U.S.C. § 7704(a)(2).

22      Registration of a domain name requires that the registrant verify that they do not intend

23  to use the domain name to violate the rights on any third party, as an example see Exhibit D to

24  the Declaration of Richard Grabowski filed in support of Plaintiff's Opposition to Defendant's

25  motion to Compel.  By using the domain name "calike.info" to send an email with a deceptive

26  subject line in violation of 15 U.S.C. § 7704(a)(2) the registrant has obtained the domain name

27  "by means of false or fraudulent pretenses or representations" in direct violation of 15 U.S.C. §

28  7704(a)(1)(A).

**EMAIL # 7 (Exhibit (G))**

Email # 7 was sent supposedly by "Market Survey Group" the actual return address is "ada@olencia.com." See Exhibit G for the email and header information. These two identifiers do not identify any actual sender. The domain name shown in the sending address is "olencia.com". A ***WHOIS*** domain name search indicates that "olencia.com" is not currently owned. However, during the time of the incident research conducted by Plaintiff's agent indicate "olencia.com" was owned by "Mareand" residing at 1014 S Westlake Blvd., Ste 14-106, Westlake Village, CA 91361, see Exhibit L. Plaintiff's research indicates that this is an airmail drop box also used by "masruvi.com" (identified in Email No. 2 above) at alternate times to its use of the San Francisco UPS drop box.

The Internet Protocol (IP) address shown as the sending address in the header information is "206.114.100.213", see the header information for Email # 7 included in Exhibit G. This IP address is within a block owned by UUNET Technologies, Inc., see the attached ***WHOIS*** IP report included in Exhibit G. This indicates that this email was probably routed through UUNET Technologies' servers. It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in order to send emails while hiding the identity of the sender) to send SPAM in violation of the CAN SPAM Act. In this case there is nothing to indicate whether the email originated from UUNET or was simply routed through UUNET's servers. Since it is highly unlikely that UUNET (one of the largest Internet Service Providers) is in business with or allowed an unknown SPAMMER to use its computers this email is in direct violation of both paragraph (A) and (C) of 15 U.S.C. § 7704(a)(1). First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all. Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "MarketSurveyGroup.com." It also contains the language: "MarketSurveyGroup is not affiliated with Royal Philips Electronics" a disclaimer that is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by

Royal Philips Electronics for trademark infringement for using their name in this advertisement. "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.  See the attached **WHOIS** IP report included in Exhibit A for MarketSurveyGroup.com.  There is no indication in the header information that this email was sent by or for Netblue/YFDirect.  Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect.

The subject header of Email # 7 is: "Brian, Test out this Flat Screen TV and keep it". The objective circumstances presented by this offer are that the email recipient has only to test this product and they can keep it.  The contents of the email state that "Brian" need merely to participate in a survey and he can receive a "FREE" Flat Screen TV.  However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.  Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" Flat Screen TV.  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the objective circumstances of the subject header indicate that the email recipient will receive a free Flat Screen TV, just by answering survey questions.  It is clear from the evidence presented that this is absolutely not the case.  It is unclear if the email recipient will ever receive anything.  Therefore, the subject header is deceptive within the meaning of 15 U.S.C. § 7704(a)(2).

**EMAIL # 8 (Exhibit (H))**

1    Email # 8 was sent supposedly by "Market Survey Group"  the actual return address is

2    "efgAghKxBNY4eK8yh@tracertend.com."  See Exhibit G for the email and header information.

3    These two identifiers do not identify any actual sender.   The domain name shown in the

4    sending address is "tracertend.com."     A **WHOIS** domain name search indicates that

5    "tracertend.com" is not currently owned.   However, during the time of the incident research

6    conducted by Plaintiff's agent indicate "tracertend.com" was owned by "tracertend.com"

7    residing at 3830 Valley Ctr. Dr. #705 Unit 315 San Diego, CA 92130-3307, see Exhibit L.

8    Plaintiff's research indicates that this is an airmail drop box.

9    The Internet Protocol (IP) address shown as the sending address in the header

10   information is "63.208.227.242", see the header information for Email # 8 included in Exhibit H.

11   This IP address is within a block owned by Level 3 Communications, Inc., see the attached

12   **WHOIS** IP report included in Exhibit H.   This indicates that this email was probably routed

13   through Level 3 Communications' servers.   It is a normal practice of SPAMMERS to use

14   zombies (computers taken over illegally in order to send emails while hiding the identity of the

15   sender) to send SPAM in violation of the CAN SPAM Act.   Since it is highly unlikely that Level

16   3 Communications (one of the largest broadband companies in the U.S.) is in business with or

17   allowed a SPAMMER in Kenya to use its computers this email is in direct violation of both

18   paragraph (A) and (C) of  15 U.S.C. § 7704(a)(1).   First, It provides misleading information

19   regarding the identity of the sender, in fact it does not identify the actual sender at all.

20   Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

21   This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement

22   bearing the 2004 copyright notification for "InternetOpinionGroup.com".  It also contains the

23   language: "MarketSurveyGroup.com is not affiliated with any of the above brands" a disclaimer

24   that is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution

25   by Cannon for trademark infringement for using their name in this advertisement.   It also

26   indicates that the SPAMMERS probably got confused about which scam they were running

27   confusing        "MarketSurveyGroup.com"        with        "InternetOpinionGroup.com."

28   "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.,   see the attached

1   **WHOIS** IP report included in Exhibit A for MarketSurveyGroup.com.

2   "InternetOpinionGroup.com" is a domain name owned by YFDirect, Inc., see the attached

3   **WHOIS** IP report included with Email # 4 included in Exhibit D for InternetOpinionGroup.com.

4   There is no indication in the header information that this email was sent by or for

5   Netblue/YFDirect.  Therefore the header information is completely misleading as to the actual

6   sender or more likely the procurer, Netblue/YFDirect.

7   The subject header of Email # 8 is: "friend, Test out this Digital Camera and keep it".

8   The objective circumstances presented by this offer are that the email recipient has only to test

9   this product and they can keep it.  The contents of the email state that "Brian" need merely to

10   participate in a survey and he can receive a "FREE" Digital Camera.  However,  as has been

11   demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email

12   recipient is foolish enough to actually click on the advertisement, they are sent to a website

13   owned by Netblue/YFDirect, and they are told they must provide significant personal

14   information.  Further the email recipient is also required to purchase and keep for up to 90

15   days several products in order to get their supposedly "Free" Digital Camera.  It is unclear if

16   the email recipient, even if they follow the instructions from the advertisement, actually ever get

17   anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are

18   reports from an Internet fraud reporting website that indicate other email recipients have

19   attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff

20   is pursuing the sources of these reports and will supplement this response with the identities

21   and sworn statements of the source of these reports if possible to show a pattern or practice

22   by Defendants.

23   Therefore, the objective circumstances of the subject header indicate that the email

24   recipient will receive a free Digital Camera, just by answering survey questions.  It is clear from

25   the evidence presented that this is absolutely not the case.  It is unclear if the email recipient

26   will ever receive anything.  Therefore, the subject header is deceptive within the meaning of

27   15 U.S.C. § 7704(a)(2).

28   ///

**EMAIL # 9 (Exhibit (I))**

Email # 9 was sent supposedly by "Market Survey Group"  the actual return address is "Deana@catforme.com."  See Exhibit I for the email and header information.  These two identifiers do not identify any actual sender.  The domain name shown in the sending address is "catforme.com."  A ***WHOIS*** domain name search indicates that "catforme.com" is not currently owned.  However, during the time of the incident research conducted by Plaintiff's agent indicate "catforme.com" was owned by "catforme.com" residing at 7327 SW Barnes Rd. #105 Portland, OR 97225, see Exhibit L.  Plaintiff's research indicates that this is a mail drop box.

The Internet Protocol (IP) address shown as the sending address in the header information is "63.208.227.198", see the header information for Email # 9 included in Exhibit I. This IP address is within a block owned by Level 3 Communications, Inc., see the attached ***WHOIS*** IP report included in Exhibit I.  The actual sending server is "unknown.level3.net" indicating that this is probably an internal computer used by Level 3 Communications inside its company.  This indicates that this email was probably routed through Level 3 Communications' computer.  It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in order to send emails while hiding the identity of the sender) to send SPAM in violation of the CAN SPAM Act.  In this case there is nothing to indicate whether the email originated from Level 3 Communications or was simply routed through Level 3 Communications' servers.  Since it is highly unlikely that Level 3 Communications (one of the largest broadband companies in the U.S.) is in business with or allowed an unknown SPAMMER to use its computers this email is in direct violation of both paragraph (A) and (C) of  15 U.S.C. § 7704(a)(1).  First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all.   Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "MarketSurveyGroup.com".  It also contains the language: "MarketSurveyGroup.com is not affiliated with PalmOne, Inc." a disclaimer that is

obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by PalmOne for trademark infringement for using their name in this advertisement. "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.   See the attached **WHOIS** IP report included in Exhibit A for MarketSurveyGroup.com.  There is no indication in the header information that this email was sent by or for Netblue/YFDirect.  Therefore, the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect.

The subject header of Email # 9 is: "Tammy, Test out this new Palm One and keep it." The objective circumstances presented by this offer are that the email recipient has only to test this product and they can keep it.  The contents of the email state that "Tammy" need merely claim her gift and she can receive a "FREE" TREO 650.   However, as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect and they are told they must provide significant personal information.  Further, the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" TREO 650.  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the objective circumstances of the subject header indicate that the email recipient will receive a free TREO 650, just by answering survey questions.  It is clear from the evidence presented that this is absolutely not the case.  It is unclear if the email recipient will ever receive anything.  Therefore, the subject header is deceptive within the meaning of  15 U.S.C. § 7704(a)(2).

///

**EMAIL # 10 (Exhibit (J))**

Email # 10 was sent supposedly by "New Phone" the actual return address is "NewPhone@brandsonetoone.com."  See Exhibit J for the email and header information. These two identifiers do not identify any actual sender.  The domain name shown in the sending address is "brandsonetoone.com".   A **WHOIS** domain name search indicates that "HardWiredConnections" an unknown entity residing at 511 Avenue of the Americas, PMB #73, New York, NY 10011.  Plaintiff's research indicates this is a mail drop box.

The Internet Protocol (IP) address shown as the sending address in the header information is "204.92.160.43."  See the header information for Email # 10 included in Exhibit J.  This IP address is within a block owned by UUNET Technologies, Inc., see the attached **WHOIS** IP report included in Exhibit J.  This indicates that this email was probably routed through UUNET Technologies' servers.  It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in order to send emails while hiding the identity of the sender) to send SPAM in violation of the CAN SPAM Act.  In this case there is nothing to indicate whether the email originated from UUNET or was simply routed through UUNET's servers. Since it is highly unlikely that UUNET (one of the largest Internet Service Providers) is in business with or allowed an unknown SPAMMER to use its computers this email is in direct violation of both paragraph (A) and (C) of  15 U.S.C. § 7704(a)(1).  First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all.   Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "EveryFreeGift.com,"  It also contains the language: "EveryFreeGift.com is not affiliated with Motorola Corporation" a disclaimer that is obviously intended to protect the owners of EveryFreeGift.com from prosecution by Motorola Corporation for trademark infringement for using their name in this advertisement.   "EveryFreeGift.com" is a domain name owned by YFDirect, Inc.  See the attached **WHOIS** IP report included in Exhibit C for EveryFreeGift.com.  There is no indication in the header information that this

email was sent by or for Netblue/YFDirect.  Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect.

The subject header of Email # 10 is: "Respond now for this razor thin cell phone".  The objective circumstances presented by this offer are that the email recipient has only to respond to this email and they can keep the product.  The contents of the email state that "The new Moto Razr V3 yours free".   However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.  Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" Moto Razr V3.  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the objective circumstances of the subject header indicate that the email recipient will receive a free Moto Razr V3.  It is clear from the evidence presented that this is absolutely not the case.   It is unclear if the email recipient will ever receive anything.  Therefore, the subject header is deceptive within the meaning of  15 U.S.C. § 7704(a)(2).

**INTERROGATORY NO. 7:**

Please describe the respect in which each of the email messages referred to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT allegedly violates **California Business and Professions Code** § 17529.5.

**RESPONSE:**

Plaintiff supplements his response as follows:

Plaintiff has complained of violations of the **California Business and Professions**

**Code** on the basis of false or misleading header information as described in **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2) and violations based on deceptive subject headings as defined in **CA Bus. & Prof. Code** § 17529.5(a)(3).

      **CA Bus. & Prof. Code** § 17529.5(a) states:

"(a)    It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

      (1)    The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

      (2)    The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

      (3)    The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

California has adopted a broad definition of advertise: "any means of exploitation through the conveyance of information is advertising." **People v. McKean,** (1925) 76 Cal.App. 114 at 131 [243 P. 898].

"'Advertiser' means a person or entity that advertises through the use of commercial e-mail advertisements." **CA Bus. & Prof. Code** §17529.1(a).

The California Legislator decided: "There is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore." **CA Bus. & Prof. Code** §17529(j)

The California Legislator also found that: "The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements." **CA Bus. & Prof. Code** §17529(k)

"'Commercial e-mail advertisement' means any electronic mail message initiated for the

purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.  **CA Bus. & Prof. Code** §17529.1(c).

All of the emails in question were sent to Plaintiff's email addresses in California.

Plaintiff provides the following 10 emails (attached as exhibit A – J) with explanations of how each of these 10 emails violate **CA Bus. & Prof. Code** § 17529.5(a), in compliance with the court's order of August 3, 2006.

### EMAIL # 1 (Exhibit (A))

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "MarketSurveyGroup.com." "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.,  see the attached **WHOIS** IP report included with Email # 1 for MarketSurveyGroup.com.  It also contains the language: "MarketSurveyGroup.com is not affiliated with T-Mobile, Inc." a disclaimer that is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by T-Mobile for trademark infringement for using their name in this advertisement.   It is therefore an advertisement of Netblue/YFDirect per the applicable statues and case law cited above.

Email # 1 was sent supposedly by "Market Survey Group"  the actual return address is "GjA8G8ANL4xYJfxjyB8fG466KgG@marctrac.com."  These two identifiers do not identify any actual sender.  The Internet Protocol (IP) address shown as the sending address in the header information is "63.208.227.246," see the header information for Email # 1 included in Exhibit A. This IP address is within a block owned by Level 3 Communications, see the attached **WHOIS** IP report included with Email # 1.  The domain name shown in the sending address is "marctrac.com."  A **WHOIS** domain name search shows that this domain name is owned by Spiral Matrix in Kenya, Africa, an unidentifiable entity or person.  The domain name server IP for this domain name is "204.251.10.100" indicating that this email was routed through Level 3 Communications servers.  It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in order to send emails while hiding the identity of the sender) to send SPAM.  Since it is highly unlikely that Level 3 Communications (one of the largest broadband companies in the U.S.) is in business with or allowed a SPAMMER in Kenya to use its

1   computers this email is in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).
2   First, It provides misleading information regarding the identity of the sender, in fact it does not
3   identify the actual sender at all.   Second, it used a zombie to illegally reroute the email to hide
4   the identity of the real sender.

5          There is no indication in the header information that this email was sent by or for
6   Netblue/YFDirect.    There    is    no    indication    that    Netblue/YFDirect    had    either
7   GjA8G8ANL4xYJfxjyB8fG466KgG@marctrac.com, Spiral Matrix, or Level 3 Communication's
8   permission or agreement to use their names and equipment.   There is no indication that
9   GjA8G8ANL4xYJfxjyB8fG466KgG@marctrac.com or Spiral Matrix actually sent this email, or
10  that Spiral Matrix, an entity supposedly in Kenya even exists.   There is every indication that
11  Level 3 Communication's equipment was used illegally to reroute the email.   Therefore, the
12  header information is completely misleading as to the actual sender or more likely the
13  procurer, Netblue/YFDirect in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and
14  (2).

15         The subject header of Email # 1 is: "Test out this new T-Mobile Sidekick and keep it."
16  The reasonable circumstances presented by this offer are that the email recipient has only to
17  test this product and they can keep it.   The contents of the email state the T-Mobile advertised
18  is "Yours…Free," implying that the recipient will receive a T-Mobile Sidekick II for free.
19  However, as has been demonstrated in Plaintiff's initial disclosures and other discovery
20  responses, if the email recipient is foolish enough to actually click on the advertisement, they
21  are sent to a website owned by Netblue/YFDirect, and they are told they must provide
22  significant personal information.   Further the email recipient is also required to purchase and
23  keep for up to 90 days several products in order to get their supposedly "Free" T-Mobile.   It is
24  unclear if the email recipient, even if they follow the instructions from the advertisement,
25  actually ever get anything.   Plaintiff's agents were never successful in their attempts.   Attached
26  as Exhibit K are reports from an Internet fraud reporting website that indicate other email
27  recipients have attempted to get their "Free" prize without success, or only after threats of legal
28  action.   Plaintiff is pursuing the sources of these reports and will supplement this response with

the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an email advertisement intended to get the recipient to try the product and then keep it.  It is clear from the evidence presented that this is absolutely not the case.  It is unclear if the email recipient will ever receive anything.  The recipient is never asked to actually try the product.  Therefore, the subject header represents a violation of *CA Bus. & Prof. Code* § 17529.5(a)(3).

### EMAIL # 2 (Exhibit (B))

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "MarketSurveyGroup.com." "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.,  see the attached *WHOIS* IP report included with Exhibit A for MarketSurveyGroup.com.   It also contains the language: "MarketSurveyGroup.com is not affiliated with PalmOne, Inc.", a disclaimer that is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by PalmOne, Inc. for trademark infringement for using their name in this advertisement.   It is therefore an advertisement of Netblue/YFDirect per the applicable statues and case law cited above.

Email # 2 was sent supposedly by "Market Survey Group"  the actual return address is "Aisha@masruvi.com."  These two identifiers do not identify any actual sender.  The Internet Protocol (IP) address shown as the sending address in the header information is "63.208.227.246," see the header information for Email # 2 included in Exhibit B.  This IP address is within a block owned by 360Networks, Inc., see the attached *WHOIS* IP report included with Email # 2 in Exhibit B.  The domain name shown in the sending address is "masruvi.com."  A *WHOIS* domain name search shows that this domain name is owned by "masruvi.com," an unidentifiable entity or person.  Indicating that this email was routed through 360Networks servers.  It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in order to send emails while hiding the identity of the sender) to send advertisements in violation of the *CA Bus. & Prof. Code*.  Since it is highly unlikely that

360Networks (one of the largest international broadband companies in the world) is in business with or allowed a SPAMMER to use its computers this email is in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).   First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all. Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

There is no indication in the header information that this email was sent by or for Netblue/YFDirect. There is no indication that Netblue/YFDirect had either Aisha@masruvi.com, masruvi.com, or 360Network's permission or agreement to use their names and equipment. There is no indication that Aisha@masruvi.com or masruvi.com actually sent this email, or that masruvi.com even exists.   There is every indication that 360Network's equipment was used illegally to reroute the email.   Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).

The subject header of Email # 2 is: "\N, Test and keep this new Palm One."   The reasonable circumstances presented by this offer are that the email recipient has only to test this product and they can keep it.   The contents of the email state the Palm One Treo 360 advertised is "Yours…Free," implying that the recipient will receive a Palm One Treo 360 for free.   However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.   Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" Palm One Treo 360.   It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.   Plaintiff's agents were never successful in their attempts.   Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.   Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these

1   reports if possible to show a pattern or practice by Defendants.

2       Therefore, the reasonable circumstances of the subject header indicate that this is an

3   email advertisement intended to get the recipient to try the product and then keep it.  It is clear

4   from the evidence presented that this is absolutely not the case.  It is unclear if the email

5   recipient will ever receive anything.  The recipient is never asked to actually try the product.

6   Therefore, the subject header represents a violation of *CA Bus. & Prof. Code* § 17529.5(a)(3).

7       **EMAIL # 3 (Exhibit (C))**

8       This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement

9   for "EveryFreeGift."  Unfortunately the server that the email points to no longer exists and

10  therefore the pictures originally shown cannot be provided. The email contains the language:

11  "EveryFreeGift is not affiliated with Motorola Corporation," a disclaimer that is obviously

12  intended to protect the owners of EveryFreeGift from prosecution by Motorola for trademark

13  infringement for using their name in this advertisement, even though it tries to disguise this

14  advertisement by referring to Motorola as "MotoÂ®" in the advertisement.

15  "EveryFreeGift.com" is a domain name owned by YFDirect, Inc.,  see the attached **WHOIS** IP

16  report included in Exhibit C for EveryFreeGift.com.  It is therefore an advertisement of

17  Netblue/YFDirect per the applicable statues and case law cited above.

18      Email # 3 was sent supposedly by "Razor Phone"  the actual return address is

19  "return@savings4us.info," see Exhibit C for the email and header information.  These two

20  identifiers do not identify any actual sender.  The name "return" when used in an email is

21  typical of SPAMMERS who generate the email accounts by an automated means, buying

22  domain names in bulk and then generating email accounts using unidentifiable account

23  names.  The domain name shown in the sending address is "savings4us.info."   A **WHOIS**

24  domain name search, see Exhibit C, shows that this domain name is owned by

25  "ProtectFly.com."  "ProtectFly.com" is a service offered by "Registerfly.com" a domain name

26  registration company.  Registerfly uses their name Protectfly as the identification information

27  associated with the domain name, preventing anyone from actually identifying the real sender.

28  The identity of the actual sender can only be discovered by requesting the information from

Resgisterfly by subpoena.  Approximately 79% of all of the 4500 emails received by Plaintiff (see Exhibit M) in this action came through domain names issued by Registerfly and protected under their Protectfly service.  Plaintiff has subpoenaed Registerfly for the identification information regarding all of the domain names used in this spamming incident.  Plaintiff will provide the results of that subpoena when it is received.

The Internet Protocol (IP) address shown as the sending address in the header information is "216.22.59.11," see the header information for Email # 3 included in Exhibit C.  This IP address is within a block owned by  ServInt Corp., see the attached **WHOIS** IP report included in Exhibit C.  Servint Corp. is a defunct company in both California and Virginia.  Servint Corp. was an internet access and portal company who declared bankruptcy and was subsequently sued by the U.S. Government for failure to post payroll taxes.  **In re Servint Corp.**, 298 B.R. 579 (Bkrtcy. E.D. Va., 2003).  Notice that this action took place two years prior to the incident period of this case.  Therefore the identification information cannot be correct, the information used to obtain the domain name is invalid.   The received information in the header information indicates that the email was sent from Launchmediaonline.com which is owned by Domains by Proxy, Inc.  Therefore the name provided (srv.launchmediaonline.com) in the sent from field of the header contradicts the IP address information (216.22.59.11 belonging supposedly to the defunct company Servint Corp.) in the same field.  Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).

The subject header of Email # 3 is: "State of the art slim camera phone is on the house."  The reasonable circumstances presented by this offer are that the email recipient has only to claim this product and they can keep it.  The contents of the email state "Claim your Moto® Razr V3 Flip Phone!" implying that the recipient will receive a Moto® Razr V3 Flip Phone simply by claiming it.  However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they

must provide significant personal information.  Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" Razr V3 Flip Phone.  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an email advertisement intended to get the recipient to claim the product and then keep it.  It is clear from the evidence presented that this is absolutely not the case.  It is unclear if the email recipient will ever receive anything.  The recipient is never asked to actually claim the product.  Therefore, the subject header represents a violation of **CA Bus. & Prof. Code** § 17529.5(a)(3).

**EMAIL # 4 (Exhibit (D))**

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "InternetOpinionGroup.com." "InternetOpinionGroup.com" is a domain name owned by YFDirect, Inc., see the attached **WHOIS** IP report included with Email # 4 included in Exhibit D for InternetOpinionGroup.com. It also contains the language: "Internet Opinion Group is not affiliated with Motorola Corporation," a disclaimer that is obviously intended to protect the owners of InternetOpinionGroup.com from prosecution by Motorola for trademark infringement for using their name in this advertisement.   It is therefore an advertisement of Netblue/YFDirect per the applicable statues and case law cited above.

Email # 4 was sent supposedly by "InternetOpinionGroup"  the actual return address is "GjA8G8ANL4xYJfxjyB8fG466KgG@trakerstat.com."  These two identifiers do not identify any actual sender.  The Internet Protocol (IP) address shown as the sending address in the header information is "63.208.227.168," see the header information for Email # 4 included in Exhibit D.

1   This IP address is within a block owned by Level 3 Communications, see the attached **WHOIS**

2   IP report included with Email # 4 in Exhibit D.  The domain name shown in the sending

3   address is "trakerstat.com."  A **WHOIS** domain name search, see Exhibit D, shows that this

4   domain name is owned by "trakerstat.com," an unidentifiable entity or person.   Plaintiff

5   subpoenaed the billing information regarding the drop box at 2269 Chestut St. #631, San

6   Francisco, CA, and discovered the real owners of the drop box were: Frontline Direct, Inc.,

7   Blue Interactive, Inc., Kim Reed, John Perell, and Amanda Pauline Currie.   Plaintiff has

8   provided the results of these subpoenas to Defendant separately.   Since it is highly unlikely

9   that Level 3 Communications (one of the largest broadband companies in the U.S.) is in

10   business with or allowed a SPAMMER to use its computers this email is in direct violation of

11   **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).   First, It provides misleading information

12   regarding the identity of the sender, in fact it does not identify the actual sender at all.

13   Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

14       There is no indication in the header information that this email was sent by or for

15   Netblue/YFDirect.   There   is   no   indication   that   Netblue/YFDirect   had   either

16   GjA8G8ANL4xYJfxjyB8fG466KgG@trakerstat.com, Frontline Direct, Inc., Blue Interactive, Inc.,

17   Kim Reed, John Perell, Amanda Pauline Currie, or Level 3 Communication's permission or

18   agreement   to   use   their   names   and   equipment.     There   is   no   indication   that

19   GjA8G8ANL4xYJfxjyB8fG466KgG@trakerstat.com, Frontline Direct, Inc., Blue Interactive, Inc.,

20   Kim Reed, John Perell, or Amanda Pauline Currie actually sent this email, or that these are

21   real entities or persons.   There is every indication that Level 3 Communication's equipment

22   was used illegally to reroute the email.   Therefore the header information is completely

23   misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in direct

24   violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).

25       The subject header of Email # 4 is: ", Test and keep this new cell phone".   The

26   reasonable circumstances presented by this offer are that the email recipient has only to test

27   this product and they can keep it.   The contents of the email state the Moto® Razr V3 Flip

28   Phone advertised is "Yours…Free" implying that the recipient will receive a Moto® Razr V3

Flip Phone for free.   However, as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.   Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" Moto® Razr V3 Flip Phone.   It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.   Plaintiff's agents were never successful in their attempts.   Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.   Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an email advertisement intended to get the recipient to try the product and then keep it.   It is clear from the evidence presented that this is absolutely not the case.   It is unclear if the email recipient will ever receive anything.   The recipient is never asked to actually try the product.   Therefore, the subject header represents a violation of **CA Bus. & Prof. Code** § 17529.5(a)(3).

### EMAIL # 5 (Exhibit (E))

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement for "BigWin.com."   Unfortunately the server that the email points to no longer exists and therefore the pictures originally shown cannot be provided. The email contains the language: "BigWin.com is not affiliated with any of the above brands," a disclaimer that is obviously intended to protect the owners of BigWin.com from prosecution for trademark infringement for using the proprietary names in this advertisement.   "BigWin.com" is a domain name owned by YFDirect, Inc.,  see the attached **WHOIS** IP report included in Exhibit C for BigWin.com.  It is therefore an advertisement of Netblue/YFDirect per the applicable statues and case law cited above.

Email # 5 was sent supposedly by "$1800.00 value!"   The actual return address is

"return@savingsfly.info," see Exhibit F for the email and header information.   These two identifiers do not identify any actual sender.   The name "return" when used in an email is typical of SPAMMERS who generate the email accounts by an automated means, buying domain names in bulk and then generating email accounts using unidentifiable account names.   The domain name shown in the sending address is "savingsfly.info."   A **WHOIS** domain name search, see Exhibit E, shows that this domain name is owned by "ProtectFly.com."   "ProtectFly.com" is a service offered by "Registerfly.com" a domain name registration company.   Registerfly uses their name Protectfly as the identification information associated with the domain name, preventing anyone from actually identifying the real sender. The identity of the actual sender can only be discovered by requesting the information from Resgisterfly by subpoena.   Approximately 79% of all of the 4500 emails received by Plaintiff (see Exhibit M) in this action came through domain names issued by Registerfly and protected under their Protectfly service.   Plaintiff has subpoenaed Registerfly for the identification information regarding all of the domain names used in this spamming incident.   Plaintiff will provide the results of that subpoena when it is received.

The Internet Protocol (IP) address shown as the sending address in the header information is "216.22.59.12," see the header information for Email # 5 included in Exhibit E. Note that this is one number off of the IP Address used in Email # 3 (216.22.59.11) and indicates that the SPAMMER was using a series of IP addresses purchased or stolen from a single vendor to generate the SPAM.   This IP address is within a block owned by  ServInt Corp., see the attached **WHOIS** IP report included in Exhibit E.   Servint Corp. is a defunct company.   Servint Corp. is discussed above.   Therefore the identification information cannot be correct, the information used to obtain the domain name is invalid.   The received information in the header information indicates that the email was sent from "srv.launchmediaonline.com" which is owned by Domains by Proxy, Inc., see **WHOIS** information in Exhibit E.   Therefore the name provided (savingsfly.info) in the sent from field of the header contradicts the IP address information (216.22.59.12 belonging supposedly to the defunct company Servint Corp.) in the same field.   Therefore the header information is

completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).

The subject header of Email # 5 is: "Congratulations- Your Complimentary LG Washer/Dryer Combo is waiting."  The reasonable circumstances presented by this offer are that the email recipient has only to claim this product and they can keep it.  However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.  Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Complimentary LG Washer/Dryer Combo."  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an email advertisement intended to get the recipient to claim the product and then keep it.  It is clear from the evidence presented that this is absolutely not the case.  It is unclear if the email recipient will ever receive anything.  The recipient is never asked to actually claim the product.  Therefore, the subject header represents a violation of **CA Bus. & Prof. Code** § 17529.5(a)(3).

### EMAIL # 6 (Exhibit (F))

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement for "BigWin.com."  Unfortunately the server that the email points to no longer exists and therefore the pictures originally shown cannot be provided. The email contains the language: "BigWin.com is not affiliated with any of the above brands," a disclaimer that is obviously intended to protect the owners of BigWin.com from prosecution for trademark infringement for

1   using the proprietary names in this advertisement.  "BigWin.com" is a domain name owned by

2   YFDirect, Inc.,  see the attached **WHOIS** IP report included in Exhibit C for BigWin.com.  It is

3   therefore an advertisement of Netblue/YFDirect per the applicable statues and case law cited

4   above.

5           Email # 6 was sent supposedly by "Limited Quantity Left"  the actual return address is

6   "return@calike.info," see Exhibit F for the email and header information.  These two identifiers

7   do not identify any actual sender.  The name "return" when used in an email is typical of

8   SPAMMERS who generate the email accounts by an automated means, buying domain

9   names in bulk and then generating email accounts using unidentifiable account names.  The

10  domain name shown in the sending address is "calike.info."   A **WHOIS** domain name search,

11  see Exhibit E, shows that this domain name is owned by "ProtectFly.com."  "ProtectFly.com"

12  and "Registerfly.com" are discussed above.  Plaintiff will provide the results of that subpoena

13  when it is received.

14          The Internet Protocol (IP) address shown as the sending address in the header

15  information is "216.22.59.84," see the header information for Email # 6 included in Exhibit E.

16  Note that this is similar the IP Address used in Email # 3 and # 5 (216.22.59.11 and

17  216.22.59.12) and indicates that the SPAMMER was using a series of IP addresses purchased

18  or stolen from a single vendor to generate the SPAM.  This IP address is within a block owned

19  by  ServInt Corp., see the attached **WHOIS** IP report included in Exhibit E.  Servint Corp. is a

20  defunct company is discussed above.   Therefore the identification information cannot be

21  correct, the information used to obtain the domain name is invalid.   The received information

22  in the header information indicates that the email was sent from calike.info which is protected

23  by Protectfly.com.   Therefore the name provided (calike.info) in the sent from field of the

24  header contradicts the IP address information (216.22.59.84 belonging supposedly to the

25  defunct company Servint Corp.) in the same field.   Therefore the header information is

26  completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in

27  direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).

28          The subject header of Email # 6 is: "Congratulations! Your Complimentary Kenmore

1  Refrigerator is pending. $2099.88 value!"  The reasonable circumstances presented by this

2  offer are that the email recipient has only to claim this product and they can keep it.  However,

3  as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the

4  email recipient is foolish enough to actually click on the advertisement, they are sent to a

5  website owned by Netblue/YFDirect, and they are told they must provide significant personal

6  information.  Further the email recipient is also required to purchase and keep for up to 90

7  days several products in order to get their supposedly "Complimentary Kenmore Refrigerator."

8  It is unclear if the email recipient, even if they follow the instructions from the advertisement,

9  actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached

10 as Exhibit K are reports from an Internet fraud reporting website that indicate other email

11 recipients have attempted to get their "Free" prize without success, or only after threats of legal

12 action.  Plaintiff is pursuing the sources of these reports and will supplement this response with

13 the identities and sworn statements of the source of these reports if possible to show a pattern

14 or practice by Defendants.

15       Therefore, the reasonable circumstances of the subject header indicate that this is an

16 email advertisement intended to get the recipient to claim the product and then keep it.  It is

17 clear from the evidence presented that this is absolutely not the case.  It is unclear if the email

18 recipient will ever receive anything.  The recipient is never asked to actually claim the product.

19 Therefore, the subject header represents a violation of **CA Bus. & Prof. Code** § 17529.5(a)(3).

20       **EMAIL # 7 (Exhibit (G))**

21       This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement

22 bearing the 2004 copyright notification for "MarketSurveyGroup.com."

23 "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.,  see the attached

24 **WHOIS** IP report included with Exhibit A for MarketSurveyGroup.com.  It also contains the

25 language: "MarketSurveyGroup is not affiliated with Royal Philips Electronics" a disclaimer that

26 is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by

27 Royal Philips Electronics for trademark infringement for using their name in this advertisement.

28 It is therefore an advertisement of Netblue/YFDirect per the applicable statues and case law

1   cited above.

2       Email # 7 was sent supposedly by "Market Survey Group"  the actual return address is

3   "ada@olencia.com."   These two identifiers do not identify any actual sender.   The Internet

4   Protocol (IP) address shown as the sending address in the header information is

5   "206.114.100.213," see the header information for Email # 7 included in Exhibit G.  This IP

6   address is within a block owned by UUNET Technologies, Inc. see the attached **WHOIS** IP

7   report included with Email # 7 in Exhibit G.  The domain name shown in the sending address is

8   "olencia.com."   A **WHOIS** domain name search indicates that "olencia.com" is not currently

9   owned.   However, during the time of the incident research conducted by Plaintiff's agent

10  indicate "olencia.com" was owned by "Mareand" residing at 1014 S Westlake Blvd Ste 14-106

11  Westlake Village, CA 91361, see Exhibit L.  Plaintiff's research indicates that this is an airmail

12  drop box, used by "masruvi.com" (identified in Email No. 2 above) at alternate times to their

13  use of the San Francisco UPS drop box.   It is a normal practice of SPAMMERS to use

14  zombies (computers taken over illegally in order to send emails while hiding the identity of the

15  sender) to send advertisements in violation of the **CA Bus. & Prof. Code**.   Since it is highly

16  unlikely that UUNET Technologies, Inc. (one of the largest Internet Service Providers) is in

17  business with or allowed a SPAMMER to use its computers this email is in direct violation of

18  **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).   First, It provides misleading information

19  regarding the identity of the sender, in fact it does not identify the actual sender at all.

20  Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

21      There is no indication in the header information that this email was sent by or for

22  Netblue/YFDirect. There is no indication that Netblue/YFDirect had either ada@olencia.com,

23  olencia.com, or UUNET Technologies permission or agreement to use their names and

24  equipment.   There is no indication that ada@olencia.com or olencia.com actually sent this

25  email, or that olencia.com even exists.   There is every indication that UUNET Technologies'

26  equipment was used illegally to reroute the email.   Therefore the header information is

27  completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in

28  direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).

The subject header of Email # 7 is: "Brian, Test out this Flat Screen TV and keep it". The reasonable circumstances presented by this offer are that the email recipient has only to test this product and they can keep it.  The contents of the email state the Flat Screen TV is "Free" for participating in the survey, implying that the recipient will receive a Flat Screen TV for free.  However, as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.  Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" Flat Screen TV.  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an email advertisement intended to get the recipient to try the product and then keep it.  In this case the contents of the email contradict the subject line of the email.  The subject line indicates the Brian only has to try the Flat Screen TV, while the contents indicate Brian must participate in a survey.  It is clear from the evidence presented that this is deceptive and misleading.  It is unclear if the email recipient will ever receive anything.  The recipient is never asked to actually try the product.  Therefore, the subject header represents a violation of ***CA Bus. & Prof. Code*** § 17529.5(a)(3).

### EMAIL # 8 (Exhibit (H))

This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement bearing the 2004 copyright notification for "InternetOpinionGroup.com."  It also contains the language: "MarketSurveyGroup.com is not affiliated with any of the above brands" a disclaimer

that is obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by Cannon for trademark infringement for using their name in this advertisement.   It also indicates that the SPAMMERS probably got confused about which scam they were running confusing     "MarketSurveyGroup.com"     with     "InternetOpinionGroup.com." "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc.,   see the attached **WHOIS** IP report included in Exhibit A for MarketSurveyGroup.com. "InternetOpinionGroup.com" is a domain name owned by YFDirect, Inc., see the attached **WHOIS** IP report included with Email # 4 included in Exhibit D for InternetOpinionGroup.com. It is therefore an advertisement of Netblue/YFDirect per the applicable statues and case law cited above.

Email # 8 was sent supposedly by "Market Survey Group"  the actual return address is "efgAghKxBNY4eK8yh@tracertend.com."   These two identifiers do not identify any actual sender.   The Internet Protocol (IP) address shown as the sending address in the header information is "63.208.227.242," see the header information for Email # 8 included in Exhibit H. This IP address is within a block owned by Level 3 Communications, Inc., see the attached **WHOIS** IP report included with Email # 8 in Exhibit H.  The domain name shown in the sending address is "tracertend.com."  A **WHOIS** domain name search indicates that "tracertend.com" is not currently owned.  However, during the time of the incident research conducted by Plaintiff's agent indicate "tracertend.com" was owned by "tracertend.com" residing at 3830 Valley Ctr. Dr. #705 Unit 315 San Diego, CA 92130-3307, see Exhibit L.  Plaintiff's research indicates that this is an airmail drop box.  It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in order to send emails while hiding the identity of the sender) to send advertisements in violation of the **CA Bus. & Prof. Code**.  Since it is highly unlikely that Level 3 Communications (one of the largest broadband companies in the U.S.) is in business with or allowed a SPAMMER to use its computers this email is in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).  First, It provides misleading information regarding the identity of the sender, in fact it does not identify the actual sender at all.   Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

There is no indication in the header information that this email was sent by or for Netblue/YFDirect. There is no indication that Netblue/YFDirect had either efgAghKxBNY4eK8yh@tracertend.com, tracertend.com, or Level 3 Communications' permission or agreement to use their names and equipment. There is no indication that efgAghKxBNY4eK8yh@tracertend.com or tracertend.com actually sent this email, or that tracertend.com even exists. There is every indication that Level 3 Communications' equipment was used illegally to reroute the email. Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in direct violation of **CA Bus. & Prof. Code** § 17529.5(a)(1) and (2).

The subject header of Email # 8 is: "friend, Test out this Digital Camera and keep it." The reasonable circumstances presented by this offer are that the email recipient has only to test this product and they can keep it. The contents of the email state the Digital Camera is "Free" for participating in the survey, implying that the recipient will receive a Digital Camera for free. However, as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information. Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" Digital Camera. It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything. Plaintiff's agents were never successful in their attempts. Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action. Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an email advertisement intended to get the recipient to try the product and then keep it. In this case the contents of the email contradict the subject line of the email. The subject line

1  indicates the "friend" only has to try the Digital Camera, while the contents indicate "friend"

2  must "Sign up now" for something.   It is clear from the evidence presented that this is

3  deceptive and misleading.  It is unclear if the email recipient will ever receive anything.  The

4  recipient is never asked to actually try the product.  Therefore, the subject header represents a

5  violation of *CA Bus. & Prof. Code* § 17529.5(a)(3).

6         **EMAIL # 9 (Exhibit (I))**

7         This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement

8  bearing     the     2004     copyright     notification     for     "MarketSurveyGroup.com".

9  "MarketSurveyGroup.com" is a domain name owned by YFDirect, Inc., see the attached

10  *WHOIS* IP report included with Exhibit A for MarketSurveyGroup.com.  It also contains the

11  language: "MarketSurveyGroup.com is not affiliated with PalmOne, Inc.", a disclaimer that is

12  obviously intended to protect the owners of MarketSurveyGroup.com from prosecution by

13  PalmOne for trademark infringement for using their name in this advertisement.   It is therefore

14  an advertisement of Netblue/YFDirect per the applicable statues and case law cited above.

15         Email # 9 was sent supposedly by "Market Survey Group"  the actual return address is

16  "Deana@catforme.com."  These two identifiers do not identify any actual sender.  The Internet

17  Protocol (IP) address shown as the sending address in the header information is

18  "63.208.227.198," see the header information for Email # 9 included in Exhibit I.  This IP

19  address is within a block owned by Level 3 Communications, Inc., see the attached *WHOIS* IP

20  report included in Exhibit I.  The actual sending server is "unknown.level3.net" indicating that

21  this is probably an internal computer used by Level 3 Communications inside its company.

22  This indicates that this email was probably routed through Level 3 Communications' computer.

23         It is a normal practice of SPAMMERS to use zombies (computers taken over illegally in

24  order to send emails while hiding the identity of the sender) to send advertisements in violation

25  of the *CA Bus. & Prof. Code*.  Since it is highly unlikely that Level 3 Communications, Inc.

26  (one of the largest broadband providers in the U.S.) is in business with or allowed a

27  SPAMMER to use its computers, this email is in direct violation of *CA Bus. & Prof. Code* §

28  17529.5(a)(1) and (2).  First, It provides misleading information regarding the identity of the

sender, in fact it does not identify the actual sender at all.   Second, it used a zombie to illegally reroute the email to hide the identity of the real sender.

There is no indication in the header information that this email was sent by or for Netblue/YFDirect.   There is no indication that Netblue/YFDirect had either Deana@catforme.com, catforme.com, or Level 3 Communications permission or agreement to use their names and equipment.   There is no indication that Deana@catforme.com or catforme.com actually sent this email, or that catforme.com even exists.   There is every indication that Level 3 Communications' equipment was used illegally to reroute the email. Therefore the header information is completely misleading as to the actual sender or more likely the procurer, Netblue/YFDirect in direct violation of *CA Bus. & Prof. Code* § 17529.5(a)(1) and (2).

The subject header of Email # 9 is: "Tammy, Test out this new Palm One and keep it". The reasonable circumstances presented by this offer are that the email recipient has only to test this product and they can keep it.  The contents of the email state the TREO 650 is  "yours Free" implying that the recipient need only claim the TREO 650 to receive it for free. However, as has been demonstrated in Plaintiff's initial disclosures and other discovery responses, if the email recipient is foolish enough to actually click on the advertisement, they are sent to a website owned by Netblue/YFDirect, and they are told they must provide significant personal information.  Further the email recipient is also required to purchase and keep for up to 90 days several products in order to get their supposedly "Free" TREO 650.  It is unclear if the email recipient, even if they follow the instructions from the advertisement, actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action.  Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an

1   email advertisement intended to get the recipient to try the product and then keep it.  In this

2   case the contents of the email contradict the subject line of the email.   The subject line

3   indicates that Tammy only has to claim the TREO 650.  It is clear from the evidence presented

4   that this is deceptive and misleading.   It is unclear if the email recipient will ever receive

5   anything.   The recipient is never asked to actually try the product.   Therefore, the subject

6   header represents a violation of *CA Bus. & Prof. Code* § 17529.5(a)(3).

7        **EMAIL # 10 (Exhibit (J))**

8        This email was obviously sent for NETBLUE/YFDIRECT as it is only an advertisement

9   bearing the 2004 copyright notification for "EveryFreeGift.com."  It also contains the language:

10  "EveryFreeGift.com is not affiliated with Motorola Corporation" a disclaimer that is obviously

11  intended to protect the owners of EveryFreeGift.com from prosecution by Motorola Corporation

12  for trademark infringement for using their name in this advertisement.   "EveryFreeGift.com" is

13  a domain name owned by YFDirect, Inc., see the attached *WHOIS* IP report included in Exhibit

14  C for EveryFreeGift.com.   It is therefore an advertisement of Netblue/YFDirect per the

15  applicable statues and case law cited above.

16       Email # 10 was sent supposedly by "New Phone" the actual return address is

17  "NewPhone@brandsonetoone.com", see Exhibit J for the email and header information.

18  These two identifiers do not identify any actual sender.   The domain name shown in the

19  sending address is "brandsonetoone.com."    A *WHOIS* domain name search indicates that

20  "HardWiredConnections" an unknown entity residing at 511 Avenue of the Americas, PMB

21  #73, New York, NY 10011.  Plaintiff's research indicates this is a mail drop box.

22       The Internet Protocol (IP) address shown as the sending address in the header

23  information is "204.92.160.43," see the header information for Email # 10 included in Exhibit J.

24  This IP address is within a block owned by UUNET Technologies, Inc., see the attached

25  *WHOIS* IP report included in Exhibit J.  This indicates that this email was probably routed

26  through UUNET Technologies' servers.  It is a normal practice of SPAMMERS to use zombies

27  (computers taken over illegally in order to send emails while hiding the identity of the sender)

28  to send SPAM in violation of the CAN SPAM Act.  In this case there is nothing to indicate

1  whether the email originated from UUNET or was simply routed through UUNET's servers.
2  Since it is highly unlikely that UUNET (one of the largest Internet Service Providers) is in
3  business with or allowed an unknown SPAMMER to use its computers this email is in direct
4  violation of both paragraph (A) and (C) of 15 U.S.C. § 7704(a)(1).  First, It provides misleading
5  information regarding the identity of the sender, in fact it does not identify the actual sender at
6  all.   Second, it used a zombie to illegally reroute the email to hide the identity of the real
7  sender.

8       There is no indication in the header information that this email was sent by or for
9  Netblue/YFDirect.    There    is    no    indication    that    Netblue/YFDirect    had    either
10  NewPhone@brandsonetoone.com,    HardWiredConnections,    or    UUNET    Technologies
11  permission or agreement to use their names and equipment.   There is no indication that
12  NewPhone@brandsonetoone.com or HardWiredConnections actually sent this email, or that
13  HardWiredConnections even exists.  In fact, HardWiredConnections.com is on several internet
14  banned    lists,    identifying    it    as    a    source    of    scams    and    spam,    see
15  http://electriceye.net/banned/domainview.asp.      There   is   every   indication   that   UUNET
16  Technologies' equipment was used illegally to reroute the email.   Therefore the header
17  information is completely misleading as to the actual sender or more likely the procurer,
18  Netblue/YFDirect in direct violation of *CA Bus. & Prof. Code* § 17529.5(a)(1) and (2).

19       The subject header of Email # 10 is: "Respond now for this razor thin cell phone."   The
20  reasonable circumstances presented by this offer are that the email recipient has only to
21  respond to get this product.  The contents of the email state that "The new Moto Razr V3 yours
22  free."  However,  as has been demonstrated in Plaintiff's initial disclosures and other discovery
23  responses, if the email recipient is foolish enough to actually click on the advertisement, they
24  are sent to a website owned by Netblue/YFDirect, and they are told they must provide
25  significant personal information.  Further the email recipient is also required to purchase and
26  keep for up to 90 days several products in order to get their supposedly "Free" Moto Razr V3.
27  It is unclear if the email recipient, even if they follow the instructions from the advertisement,
28  actually ever get anything.  Plaintiff's agents were never successful in their attempts.  Attached

as Exhibit K are reports from an Internet fraud reporting website that indicate other email recipients have attempted to get their "Free" prize without success, or only after threats of legal action. Plaintiff is pursuing the sources of these reports and will supplement this response with the identities and sworn statements of the source of these reports if possible to show a pattern or practice by Defendants.

Therefore, the reasonable circumstances of the subject header indicate that this is an email advertisement intended to get the recipient to try the product and then keep it. In this case the contents of the email contradict the subject line of the email. The subject line indicates the recipient only has to respond to keep the Moto Razr V3. It is clear from the evidence presented that this is deceptive and misleading. It is unclear if the email recipient will ever receive anything. The recipient is never asked to actually try the product. Therefore, the subject header represents a violation of *CA Bus. & Prof. Code* § 17529.5(a)(3).

**INTERROGATORY NO. 14:**

If PHILLIPS alleges that he was adversely affected by a violation by any defendant of 15 U.S.C. sections 7704(a)(1), 7704(b) or 7704(d), please state all of the material facts upon which PHILLIPS bases that allegation. For purposes of this interrogatory, the words "adversely affected" have the meaning attributed to them in 15 U.S.C. section 7706(g)(1).

**RESPONSE:**

15 U.S.C. § 7706(g)(1) states: "

> "A provider of Internet access service adversely affected by a violation of section 7704(a)(1) of this title, 7704(b) of this title, or 7704(d) of this title, or a pattern or practice that violates paragraph (2), (3), (4), or (5) of section 7704(a) of this title, may bring a civil action in any district court of the United States with jurisdiction over the defendant…"

The term "adversely affected" therefore refers to any harm that results from a violation of the statues cited. 7704(a)(1) states:

(1)    Prohibition of false or misleading transmission information

> It is unlawful for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or materially misleading.

Therefore, adversely affected by violation of 7704(a)(1) means, to Plaintiff, that he has received emails that have false or misleading header information.  The legislature has defined the harm violation of this statute causes to Internet service providers, 15 USC 7701(6) states:

> (6)    The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail, as there is a finite volume of mail that such providers, businesses, and institutions can handle without further investment in infrastructure.

Plaintiff agrees with the legislature, because of a continuing onslaught of SPAM emails Plaintiff must regularly increases his network bandwidth, his storage capacity, his processing capacity, his SPAM prevention software (by purchases of new software and upgrades), and his manual efforts (both his and his employees) in order to receive, identify, and dispose of SPAM to protect his customers.   The SPAM received from Defendants added incrementally to Plaintiff's burden.  Plaintiff has no way of determining the actual incremental costs associated with Defendant's SPAM.  The exact effort needed, in terms of the assets described, to identify and dispose of Defendant's SPAM is based on the complexity and degree of deception perpetrated by Defendant and the incremental effect on Plaintiff's assets.   There is no formula or process known to Plaintiff that can be used to estimate these costs.  However, since the adverse effect is defined by statute as the transmission to a protected computer, Plaintiff has no further duty to describe an adverse effect, since he has demonstrated that the emails were transmitted with false header information to his protected computer by Defendant.

Plaintiff cannot disclose the nature of the SPAM prevention software as it is the protected property of XWALL and not Plaintiff's property.   In addition, Defendant has equal access to information regarding XWALL as it is a commercially available product.

15 USC 7704(b) does not describe an adverse effect, it does describe an illegal process whereby a SPAMMER steals information from a protected computer, or uses an illegal process to generate email accounts on that may exist on a protected computer and sending massive amounts of emails to determine those that are real accounts.  Plaintiff has demonstrated that some if not all of Defendant's SPAM emails, produced by Plaintiff, were sent to email accounts

that are either inactive are do not exist as active accounts.   Therefore, Plaintiff has been adversely affected by either the theft of his email account information through a directory harvest, or through the automated generation of email accounts in an onslaught of emails. Since these emails are not active except in Plaintiff's directories and Plaintiff did not give these email identities to anyone, no other methods exist for discovery of the email accounts.   The nature of automated account generation is that the emails which do not match email accounts on a directory are automatically not accepted by the email server.   This rejection or acceptance is used by the perpetrator to identify real accounts.   The adverse affect on Plaintiff for this type of action is the misuse of Plaintiff's assets as described above.   Plaintiff knows no way of calculating these costs.   Plaintiff's SPAM prevention software does not allow for the capture of these types of attacks, not associated with accounts on his systems.

Plaintiff does not have any facts as to how Defendant perpetrated their directory harvest or automated account generation attacks as this information is in the total control of Defendants and their affiliates/agents.   Plaintiff only knows they perpetrated these attacks because there is no other way they could have discovered Plaintiff's inactive and non-published accounts.   Plaintiff has delivered these email accounts to Defendant's attorney under the existing protective order.

Plaintiff has not complained of 15 USC 7704(d), Defendant is referring to the Jurisdiction and Venue paragraph of Plaintiff's complaint where Plaintiff described the sections of 7706 and 7704 where the court is given jurisdiction by statute.   Plaintiff did not then claim a violation of 7704(d).

**INTERROGATORY NO. 15:**

If PHILLIPS alleges that he was adversely affected by any defendant engaging in a pattern or practice that violates paragraph (2), (3), (4), or (5) of 15 U.S.C. section 7704(a), please state all of the material facts upon which PHILLIPS bases that allegation.   For the purpose of this interrogatory, the words "adversely affected" have the meaning attributed to them in 15 U.S.C. section 7706(g)(1).

///

**RESPONSE:**

Plaintiff has complained of a violation of 15 USC 7704 (a) (2).  Plaintiff did not complain of any of the other sections listed in Defendant's interrogatory.

15 U.S.C. section 7706(g)(1) states:

> "A provider of Internet access service adversely affected by a violation of section 7704(a)(1) of this title, 7704(b) of this title, or 7704(d) of this title, or a pattern or practice that violates paragraph (2), (3), (4), or (5) of section 7704(a) of this title, may bring a civil action in any district court of the United States with jurisdiction over the defendant…"

The term "adversely affected" therefore refers to any harm that results from a violation of the statues cited.   15 USC 7704(a)(2) states:

> "(2)    Prohibition of deceptive subject headings
>
> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 45 of this title)."

Therefore, adversely affected by violation of 7704(a)(2) means, to Plaintiff, that he has received emails that have false or misleading subject heading as described above.   The legislature has defined the harm violation of this statute causes to Internet service providers, 15 USC 7701 (6) states:

> (6)    The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail, as there is a finite volume of mail that such providers, businesses, and institutions can handle without further investment in infrastructure.

Plaintiff agrees with the legislature, because of a continuing onslaught of SPAM emails Plaintiff must regularly increases his network bandwidth, his storage capacity, his processing capacity, his SPAM prevention software (by purchases of new software and upgrades), and his manual efforts (both his and his employees) in order to receive, identify, and dispose of SPAM to protect his customers.   The SPAM received from Defendants added incrementally to

Plaintiff's burden.  Plaintiff has no way of determining the actual incremental costs associated with Defendant's SPAM.  The exact effort needed, in terms of the assets described, to identify and dispose of Defendant's SPAM is based on the complexity and degree of deception perpetrated by Defendant and the incremental effect on Plaintiff's assets.   There is no formula or process known to Plaintiff that can be used to estimate these costs.  However, since the adverse effect is defined by statute as the transmission to a protected computer, Plaintiff has no further duty to describe an adverse effect, since he has demonstrated that the emails were transmitted with misleading subject lines to his protected computer by Defendant.

Plaintiff cannot disclose the nature of the SPAM prevention software as it is the protected property of XWALL and not Plaintiff's property.  In addition, Defendant has equal access to information regarding XWALL as it is a commercially available product.

**SINGLETON LAW GROUP**

Dated:       August 25, 2006              /s/ Richard E. Grabowski
                                          Jason K. Singleton
                                          Richard E. Grabowski, Attorneys for Plaintiff,
                                          **Ritchie Phillips, dba R&D Computers**

## VERIFICATION

I, the undersigned certify and declare that I have read the foregoing **PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANTS INTERROGATORIES** and know its contents.

I am a party to the above entitled matter; the foregoing **PLAINTIFF'S SUPPLEMENTAL RESPONSES TO DEFENDANTS INTERROGATORIES** are true of my own knowledge, except as to those matters that are therein stated on my Information and belief, and as to those matters I believe it to be true.

I declare under the penalty of perjury under the laws of the United States of America

that the forgoing is true and correct.

Executed on the 25th day of August 2006, at Eureka, California.


 Ritchie Phillips _____
Declarant, RITCHIE PHILLIPS, dba
R&D COMPUTERS