1

**Jason K. Singleton**, State Bar #166170

2   **Richard E. Grabowski**, State Bar #236207
**SINGLETON LAW GROUP**

3   **611 "L" Street, Suite A**
**Eureka, CA 95501**

4   **lawgroup@sbcglobal.net**
**(707) 441-1177**

5   **FAX  441-1533**

6   **Attorneys for Plaintiff, R&D COMPUTERS**

7

8                          **UNITED STATES DISTRICT COURT**

9                        **NORTHERN DISTRICT OF CALIFORNIA**

10  **RITCHIE PHILLIPS, dba R&D COMPUTERS,**   )   **Case No.  C-05-4401 SC**
                                            )
11          **Plaintiff,**                         )   **PLAINTIFF'S RESPONSES TO**
                                            )   **DEFENDANTS INTERROGATORIES**
12  **vs.**                                       )
                                            )
13  **NETBLUE, INC., formerly known as**         )
    **YFDIRECT, INC., also doing business as**    )
14  **MARKETSURVEYGROUP.COM, also dba**          )
    **EASYEZSTREET.COM, also dba**               )
15  **MINGLYCOMP.INFO, also dba**                )
    **EVERYFREEGIFT.COM, KENNETH CHAN,**         )
16  **aka KENNETH CHEN, SCOTT REWICK,**          )
    **DEREK PILCH, FREDRICK HARMAN, and**        )
17  **DOES ONE through FIFTY, inclusive,**        )
                                            )
18                                          )
            **Defendants.**                      )
19  _____

20  PROPOUNDING PARTY:  Defendants, Netblue, Inc., (formerly known as YFDirect, Inc.)
                                        Kenneth Chan, Scott Rewick, Derek Pilch, and Frederick Harman
21

22  RESPONDING PARTY:    Plaintiff, Ritchie Phillips

23  SET NO.:                    ONE

24

25          Plaintiff  has not completed his investigation or analysis of the facts relating to this case,

26  has not completed discovery, and has not completed preparation for trial.    Accordingly, the

27  responses herein given are without prejudice to Plaintiff's right to produce evidence of any

28  subsequently discovered facts or interpretations thereof and/or to add to, modify or otherwise

change or amend the responses herein.  The information hereinafter set forth is true and correct to the best knowledge of Plaintiff at this particular time and is subject to correction for inadvertent errors or omissions, if any errors or omissions shall hereafter be found to exist. Plaintiff expressly reserves the right to supplement his responses as additional information is forthcoming through the discovery process.

Plaintiff makes the following responses to the Defendants' Interrogatories to Plaintiff.

**INTERROGATORY NO. 1:**

If PHILLIPS alleges that NETBLUE sent any of the email messages referred to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT, state the material facts upon which PHILLIPS bases that allegation.

**RESPONSE:**

Many of the emails alleged by Plaintiff contain references to marketsurveygroup.com, bigwin.com, and everyfreegift.com.  The registrant for these domain names in the ICANN Registry is YFDirect, Inc.  Defendant Netblue, Inc. admitted on page 2 paragraph 3 of its Answer to the Complaint that YFDirect, Inc. was the predecessor corporation of Netblue, Inc. In addition, URL links on these emails lead directly to sites that appear to be owned or provided by Netblue, Inc. such as www.bigwin.com.  Therefore, circumstances indicate that either Netblue, Inc. sent, or procured the sending, the emails alleged in Plaintiff's complaint. 15 USC 7702 (9) defines sending and procuring as equivalent actions.

**INTERROGATORY NO. 2:**

If PHILLIPS alleges that defendant Kenneth Chan sent any of the email messages referred to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT, state the material facts upon which PHILLIPS bases that allegation.

**RESPONSE:**

Plaintiff incorporates Response to Interrogatory Number 1 in its entirety in the response to this interrogatory.  Documents of incorporation, readily available from the Secretary of state of California, indicate that Kenneth Chan is an officer or director of Netblue, inc.   In addition, the internet web sites for Netblue and Oak Investment Partners, indicate that Kenneth Chan

was the founder and Chief Executive Officer of Netblue, Inc.   The term "initiating" is defined by 15 USC 7702 (9) as "when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message. For purposes of this paragraph, more than one person may be considered to have initiated a message."   Plaintiff defines "send" as "initiate" as provided by 15 USC 7702 (9) for the purposes of this response.   Therefore, since Kenneth Chan was in material control of all employees, assets, contractors, and affiliates of Netblue, Inc., at the time of the alleged incident, it can be said that he procured or directed the sending/initiating of the alleged email messages.   While it is likely that Kenneth Chan was replaced as CEO by Art Shaw in December of 2005, it is also likely that Kenneth Chan was the CEO at the time of the alleged violation in August through October of 2005.

**INTERROGATORY NO. 3:**

If PHILLIPS alleges that defendant Scott Rewick sent any of the email messages referred to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT, state the material facts upon which PHILLIPS bases that allegation.

**RESPONSE:**

Plaintiff incorporates Response to Interrogatory Number 1 in its entirety in the response to this interrogatory.  Documents of incorporation, readily available from the Secretary of state of California, indicate that Scott Rewick was an officer or director of Netblue, inc.   The term "initiating" is defined by 15 USC 7702 (9) as "when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message. For purposes of this paragraph, more than one person may be considered to have initiated a message."   Plaintiff defines "send" as "initiate" as provided by 15 USC 7702 (9) for the purposes of this response.  Therefore, since Scott Rewick was in material control of the employees, assets, contractors, and affiliates of Netblue, Inc., it can be said that he procured or directed the sending/initiating of the alleged email messages.

1  While it is likely that Scott Rewick left Netblue, Inc. by December of 2005, it is also likely that

2  Scott Rewick was an officer or director at the time of the alleged violation in August through

3  October of 2005.

4  **INTERROGATORY NO. 4:**

5     If PHILLIPS alleges that defendant Derek Pilch sent any of the email messages referred

6  to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT,

7  state the material facts upon which PHILLIPS bases that allegation.

8  **RESPONSE:**

9     Plaintiff incorporates Response to Interrogatory Number 1 in its entirety in the response

10 to this interrogatory.   Documents of incorporation, readily available from the Secretary of state

11 of California, indicate that Derek Pilch is an officer or director of Netblue, inc.   In addition the

12 Netblue, Inc. internet web site indicates that Derek Pilch  is Vice President, Media Planning &

13 Analysis, and that his responsibilities include:

14
15       "Derek Pilch serves Netblue as Vice President of Media Planning and Analysis.
         Derek and his team oversee the distribution for Netblue's products across all
16       channels and analyze and evaluate the performance of all campaigns across
         media channels, distribution partners and placements to maximize its value.
17       Derek joined Netblue in 2002 and has held a number of positions within Netblue
         including CFO and COO from 2002 to 2004 and Vice President and General
18       Manager of the Data Group in 2004."
         Netblue Internet Site (*http://www.netblue.com/meetus.html#5*).

19    The term "initiating" is defined by 15 USC 7702 (9) as "when used with respect to a

20 commercial electronic mail message, means to originate or transmit such message or to

21 procure the origination or transmission of such message, but shall not include actions that

22 constitute routine conveyance of such message. For purposes of this paragraph, more than

23 one person may be considered to have initiated a message."   Plaintiff defines "send" as

24 "initiate" as provided by 15 USC 7702 (9) for the purposes of this response.  Therefore, since

25 Derek Pilch was in material control of the employees, assets, contractors, and affiliates of

26 Netblue, Inc., it can be said that he procured or directed the sending/initiating of the alleged

27 email messages.   In addition, as Vice President of Media Planning and Analysis, Mr. Pilch

28 would have direct control of the media channels, such as commercial electronic email

1   messages/emails alleged by Plaintiff.

2   **INTERROGATORY NO. 5:**

3       If PHILLIPS alleges that defendant Fredrick Harman sent any of the email messages

4   referred to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the

5   COMPLAINT, state the material facts upon which PHILLIPS bases that allegation.

6   **RESPONSE:**

7       Plaintiff incorporates Response to Interrogatory Number 1 in its entirety in the response

8   to this interrogatory.  Documents of incorporation, readily available from the Secretary of state

9   of California, indicate that Fredrick Harman is an officer or director of Netblue, inc.   In addition,

10  the internet web site for Oak Investment Partners, indicate that Fredrick Harman, the general

11  partner for Oak Investment Partners, oversaw the investment of $20 million in Netblue, Inc. in

12  2004.       (See       Oak       Investment       Partners       internet       Site

13  (http://www.oakinv.com/article_details.asp?id=194).  The term "initiating" is defined by 15 USC

14  7702(9) as "when used with respect to a commercial electronic mail message, means to

15  originate or transmit such message or to procure the origination or transmission of such

16  message, but shall not include actions that constitute routine conveyance of such message.

17  For purposes of this paragraph, more than one person may be considered to have initiated a

18  message."   Plaintiff defines "send" as "initiate" as provided by 15 USC 7702 (9) for the

19  purposes of this response.   Therefore, since Fredrick Harman has material control of all

20  employees, assets, contractors, and affiliates of Netblue, Inc., it can be said that he procured

21  or directed the sending/initiating of the alleged email messages.  While a voluntary director of a

22  corporation generally has only limited liability, based on the standard of care as defined in

23  California Corporations Code § 309, the large investment of $20 million in a relatively small

24  corporation, Netblue, Inc., indicates that the directors more than likely play an active role in the

25  management of the business.  It is even more likely, because of the small size of Netblue, Inc.,

26  that a director making such a large investment would be aware of potentially illegal actions of

27  that corporation.  Therefore even the low standard of care normally required of directors would

28  have required Mr. Harman to take appropriate action.  Failure to take appropriate actions with

1    the knowledge of illegal activities, subjects Mr. Harman to liability for the tortuous and illegal

2    actions of Netblue, Inc.

3    **INTERROGATORY NO. 6:**

4         Please describe the respect in which each of the email messages referred to in

5    paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT

6    allegedly violates 15 U.S.C. § 7704.

7    **RESPONSE:**

8         Plaintiff objects as the question is compound as it potentially requires a separate

9    answer for each of the in excess of 1500 emails complained of by Plaintiff.  In addition, Plaintiff

10   objects as this request is unduly burdensome.   Plaintiff has now accumulated over 4500 email

11   messages in the ongoing onslaught of SPAM by Defendant's, Plaintiff as a partial answer to

12   this interrogatory will provide an electronic version of those emails to Defendant's counsel,

13   under a stipulated Protective Order as "Confidential for Attorney's Eyes Only."

14        Plaintiff alleges that these emails violate 15 USC 7704 (a) (1) in that they contain

15   header information that is technically accurate but includes an originating electronic mail

16   address, domain name, or Internet Protocol address the access to which for purposes of

17   initiating the message was obtained by means of false or fraudulent pretenses or

18   representations.  These originating electronic mail address, domain name, or Internet Protocol

19   addresses are false or fraudulent because they fail to identify accurately the protected

20   computer used to initiate the message because the person initiating the message knowingly

21   used another protected computer to relay or retransmit the message for purposes of disguising

22   its origin.  That is, these messages all indicate a connection directly to sites owned by Netblue,

23   Inc., such as bigwin.com, everyfreegift.com, and marketsurvey.com, contained in the body of

24   the email.  Therefore, these emails are commercial advertisements and promotions of Netblue,

25   Inc., as defined in the CAN SPAM Act.  Yet none of these emails are from computers or

26   domains owned or registered to Netblue, Inc, nor is there any other indication in the header

27   information that these emails were sent, or procured to be sent, by Netblue, Inc.  In addition,

28   the domain name on many of the email addresses resolve to other domain names and not to

actual persons or entities.  This is done to obfuscate the source of the email.  In addition, those emails with domain names that do resolve to specific persons or entities, used false names and addresses or post office/UPS/Airmail drop boxes as the address of the person or entity to register the domain name, making it impossible to identify the source without a subpoena. These actions violate both the intent and language of 15 USC 7704(a)(1).

Plaintiff alleges that these emails violate 15 USC 7704(a)(2) because they contain subject lines that are likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.  These subject lines are intended to induce the recipient into opening the email, in direct violation of the intent of the CAN SPAM Act as defined in 15 USC 7701(8).  Many of the alleged emails contain subject lines such as:

> "Congratulations! A Complimentary +IBwA-IKEA Giftcard+IB0A- is pending. +ACQA-1000.00 value! +AFsA-subj+AF0AWwA-text+AF0AWwA-sls+AF0A-"
>
> "Youâ€™ve been chosen for Free $500 Airline Tickets.  Claim now!"
>
> "Pat, Test out this new T-Mobile Sidekick and keep it"
>
> "David, Test out this new T-Mobile Sidekick and keep it"
>
> "Complete The Survey Keep The T-Mobile Sidekick"

Once the recipient opens the email they are directed to Netblue's web sites in order to claim their prize for <u>free</u>.  The special characters are used to try and fool SPAM filter software. However, once a recipient opens the email and goes to Netblue's web site, they discover that they must provide private profile information and purchase a series of products or services.  It is unclear if even after purchasing the products or services the recipient ever gets the prize offered in the email subject line.

**INTERROGATORY NO. 7:**

Please describe the respect in which each of the email messages referred to in paragraphs 9 through 15, 17 through 19, 21 through 23, 29, and 30 of the COMPLAINT allegedly violates California Business and Professions Code § 17529.5.

///

**RESPONSE:**

Plaintiff objects as the question is compound as it potentially requires a separate answer for each of the in excess of 1500 emails complained of by Plaintiff.  In addition, Plaintiff objects as this request is unduly burdensome.  Plaintiff has now accumulated over 4500 email messages in the ongoing onslaught of SPAM by Defendant's, Plaintiff as a partial answer to this interrogatory will provide an electronic version of those emails to Defendant's counsel, under a stipulated Protective Order as "Confidential for Attorney's Eyes Only."

Plaintiff alleges that these emails violate **California Business & Professions Code §** 17529.5(a)(2) because the email advertisements contains or are accompanied by falsified, misrepresented, or forged header information.  These originating electronic mail address, domain name, or Internet Protocol addresses are false or fraudulent because they fail to identify accurately the protected computer used to initiate the message because the person initiating the message knowingly used another protected computer to relay or retransmit the message for purposes of disguising its origin.  That is, these messages all indicate a connection directly to sites owned by Netblue, Inc., such as bigwin.com, everyfreegift.com, and marketsurvey.com, contained in the body of the email.  Therefore, these emails are email advertisements and of Netblue, Inc..  Yet none of these emails are from computers or domains owned or registered to Netblue, Inc, nor is there any other indication in the header information that these emails were sent, or procured to be sent, by Netblue, Inc.  In addition, the domain name on many of the email addresses resolve to other domain names and not to actual persons or entities.  This is done to obfuscate the source of the email.  In addition, those emails with domain names that do resolve to specific persons or entities, used false names and addresses or post office/UPS/Airmail drop boxes as the address of the person or entity to register the domain name, making it impossible to identify the source without a subpoena.

Plaintiff alleges that these emails violate **California Business & Professions Code §** 17529.5 (a)(3) because they have subject lines that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.  Many of the alleged emails contain subject lines

such as:

> "Congratulations! A Complimentary +IBwA-IKEA Giftcard+IB0A- is pending. +ACQA-1000.00 value! +AFsA-subj+AF0AWwA-text+AF0AWwA-sls+AF0A-"

> "Youâ€™ve been chosen for Free $500 Airline Tickets.  Claim now!"

> "Pat, Test out this new T-Mobile Sidekick and keep it"

> "David, Test out this new T-Mobile Sidekick and keep it"

> "Complete The Survey Keep The T-Mobile Sidekick"

Once the recipient opens the email they are directed to Netblue's web sites in order to claim their prize for <u>free</u>.  The special characters are used to try and fool SPAM filter software. However, once a recipient opens the email and goes to Netblue's web site, they discover that they must provide private profile information and purchase a series of products or services.  It is unclear if even after purchasing the products or services the recipient ever gets the prize offered in the email subject line.

**INTERROGATORY NO. 8:**

Please provide the "email addresses that had not existed for the prior year" referred to in paragraph 21 of the COMPLAINT.

**RESPONSE:**

This response is provided in a separate MS Word document on the CD provided with the 4500 plus emails under  "Confidential  for Attorney's Eyes Only" and are subject to the joint protective order agreed to by the parties.   The email addresses of R&D Computers, the intended recipients, are the confidential data in this file, all other data is not confidential.

**INTERROGATORY NO. 9:**

Please state all the material facts upon which PHILLIPS bases the allegation, in paragraph 22 of the COMPLAINT that the reference emails were "acquired as the result of a directory harvest."

**RESPONSE:**

Plaintiff alleges that his email addresses were acquired by use of a directory harvest, because: 1) some of the emails have not been assigned to customers for several years and

1    therefore cannot have been used to send emails to anyone, and therefore, since Plaintiff has

2    not shared these email addresses with anyone, can only have been discovered by a

3    mechanism intended to mechanically gather email addresses;  2) at least two of the emails

4    attacked are service/administrative emails used by mechanical processes and do not belong to

5    a person.

6    **INTERROGATORY NO. 10:**

7         Please state all the material facts upon which PHILLIPS bases the allegation, in

8    paragraph 23 of the COMPLAINT that the referenced emails were sent "from address (sic) was

9    (sic) acquired by the use of automated tools or scripts."

10   **RESPONSE:**

11        Plaintiff has now received in excess of 4500 emails since August 2005, that he alleges

12   were sent by Defendant's or on Defendant's behalf.  Almost all of these emails were sent from

13   different email addresses.  This leads to only four possible conclusions: 1)  Defendant's have

14   thousands of employees or contractors who have signed up for email addresses, to send out

15   Defendant's SPAM, unlikely as this would be prohibitively expensive;  2)  Defendant's use

16   companies who send out emails on their behalf who have thousands of employees, also

17   unlikely since this would be prohibitively expensive for those companies;  3)  Defendant's or

18   the companies they have hired are using other persons email addresses without their

19   permission to send out their SPAM, this is a distinct possibility and partially explains the large

20   number of email addresses used to send the SPAM;  4)  Defendant's and/or the companies

21   they have hired create hundreds of domain names and then use automated processes to

22   generate email addresses within those domain names, this is the most likely scenario.  To test

23   these scenarios, Plaintiff subpoenaed the domain name registration of "masruvi.com" one of

24   the domains used to send emails using the email identity "Market Survey Group".   The

25   information provided indicates that the registered owner, Kim Reed of Frontline Direct, Inc.

26   (also known as Blue Interactive and also known as ListQuest), owns dozens of domain names,

27   many that appear on the emails sent to Plaintiff.  (See Exhibit A to Declaration of Richard

28   Grabowski).    In addition, the "Whois" information provided by the ICANN registry for

1    "masruvi.com" changes regularly to various postal drop box addresses.  Plaintiff believes that

2    further discovery will show that all of he email addresses used lead to similar sources.

3    **INTERROGATORY NO. 11:**

4         Please described the nature and the results of the "random check" referred to in

5    paragraph 18 of the COMPLAINT.

6    **RESPONSE:**

7         "Random Check" refers to attempts to trace and verify the sending email address, the

8    sending domain, and the source sending protected computer of a random selection of the

9    SPAM emails.  These checks were performed using email address lookup tools commonly

10   available on the internet, and the ICANN Registry available through WHOIS lookup utilities.  In

11   some instances the sending email address did not appear to exist.  In some instances the

12   sending email address was based on a domain name that was registered with false

13   information.  In some cases the email appeared to have been sent by a real individual not

14   apparently related in any way to Defendants or any person that Plaintiff recognized,  these are

15   assumed to be stolen email identities used by the SPAMMER Defendant's to hide the true

16   identity of the sender.  In some cases the emails appeared to have been routed through

17   foreign international computers that precluded identifying the true source.

18        In some cases the apparent sending computer, based on the header information, was

19   not the computer where the domain name was registered – this fact, in an of itself, is proof that

20   the header information was fraudulent.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**INTERROGATORY NO. 12:**

Please describe the nature and the results of the "random check" referred to in paragraph 29 of the COMPLAINT.

**RESPONSE:**

See Response to Interrogatory No. 11.


**SINGLETON LAW GROUP**

Dated:        April  17 , 2006            /s/ Richard E. Grabowski
                                        Jason K. Singleton
                                        Richard E. Grabowski, Attorneys for Plaintiff,
                                        **Ritchie Phillips, dba R&D Computers**

**Confidential Attorney's Eyes Only**

Response to Defendant's Interrogatory No 8:

The following email addresses that received SPAM from Defendants have been inactive since the date shown or have never been active:

aalfs@radc.com 9/16/00
andres@radc.com 8/17/04
bicknell@radc.com 9/18/03
bsmall@bsmall.com never existed
cindy@radc.com 7/06/04
deb@radc.com 4/07/00
dhill@radc.com 11/19/03
erin@radc.com 10/31/02
haraldson@radc.com 11/10/03
harrison@radc.com 06/03/02
helen@radc.com 04/27/01
kempski@radc.com 11/10/04
kulgma@radc.com 01/01/03
rxmaker@radc.com 01/08/03

## VERIFICATION

I, the undersigned certify and declare that I have read the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANTS INTERROGATORIES** and know its contents.

I am a party to the above entitled matter; the foregoing **PLAINTIFF'S RESPONSES TO DEFENDANTS INTERROGATORIES** are true of my own knowledge, except as to those matters that are therein stated on my Information and belief, and as to those matters I believe it to be true.

I declare under the penalty of perjury under the laws of the United States of

America that the forgoing is true and correct.

Executed on the 1 7 th day of April, 2006, at Eureka, California.

Declarant, RITCHIE PHILLIPS, dba
R&D COMPUTERS

## PROOF OF SERVICE

2

3          I declare that I am a resident of the State of California, over the age of eighteen years,
and not a party to the within action.  My business address is, Singleton Law Group, 611 "L"
Street, Suite "A", Eureka, CA 95501.

4

5          I served the following document:

6
## PLAINTIFF'S RESPONSES TO DEFENDANTS
## INTERROGATORIES, SET ONE

7
on the parties listed below as follows:

8

9          Stuart C. Clark
           CARR & FERRELL LLP
10          2200 Geng Road
           Palo Alto, CA 94303

11

12   ☐     **By facsimile machine** (FAX) by personally transmitting a true copy thereof via
           an electronic facsimile machine to #

13   ☑     **By first class mail** by placing a true copy thereof in a sealed envelope with
           postage thereon fully prepaid and placing the envelope in the firm's daily mail
           processing center for mailing in the United States mail at Eureka, California.

15

16   ☐     **By personal service** by causing to by personally delivered a true copy thereof to
           the address(es) listed herein at the location listed herein.

17

     ☐     **By Federal Express, UPS,** or overnight mail

18

19   ☐     **(State)**     I declare under penalty of perjury under the laws of the State of
           California that the foregoing is true and correct.

20

21   ☑     **(Federal)**   I declare under penalty of perjury under the laws of the United
           States of America that the foregoing is true and correct.

22          Executed on April 17, 2006, at Eureka, California.

23

24                                        Roberta Alliston
                                          Roberta Alliston

25

26

28

                                                I

1  Jason K. Singleton, State Bar #166170
   Richard E. Grabowski, State Bar #236207
2  SINGLETON LAW GROUP
   611 "L" Street, Suite A
3  Eureka, CA 95501
   lawgroup@sbcglobal.net
4  (707) 441-1177
   FAX  441-1533
5
6  Attorneys for Plaintiff, R&D COMPUTERS

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10 RITCHIE PHILLIPS, dba R&D COMPUTERS,    )   Case No.  C-05-4401 SC (EDL)
                                           )
11        Plaintiff,                       )
                                           )
12 vs.                                     )   EXHIBIT M TO OPPOSITION TO
                                           )   DEFENDANTS' MOTION FOR SUMMARY
13 NETBLUE, INC., formerly known as        )   JUDGMENT
   YFDIRECT, INC., also doing business as  )
14 MARKETSURVEYGROUP.COM, also dba         )
   EASYEZSTREET.COM, also dba              )
15 MINGLYCOMP.INFO, also dba               )
   EVERYFREEGIFT.COM, KENNETH CHAN,        )
16 aka KENNETH CHEN, SCOTT REWICK,         )
   DEREK PILCH, FREDRICK HARMAN, and       )
17 DOES ONE through FIFTY, inclusive,      )
                                           )
18                                         )
          Defendants.                      )
19 _____

20

21

22      # DOCUMENTS SUBMITTED

23          # UNDER SEAL

24

25

26

27

28

1  Jason K. Singleton, State Bar #166170
   Richard E. Grabowski, State Bar #236207
2  SINGLETON LAW GROUP
   611 "L" Street, Suite A
3  Eureka, CA 95501
   lawgroup@sbcglobal.net
4  (707) 441-1177
   FAX  441-1533
5
6  Attorneys for Plaintiff, R&D COMPUTERS

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 RITCHIE PHILLIPS, dba R&D COMPUTERS,   )  Case No.  C-05-4401 SC (EDL)
                                          )
11         Plaintiff,                     )
                                          )
12 vs.                                    )  EXHIBIT N TO OPPOSITION TO
                                          )  DEFENDANTS' MOTION FOR SUMMARY
13 NETBLUE, INC., formerly known as       )  JUDGMENT
   YFDIRECT, INC., also doing business as )
14 MARKETSURVEYGROUP.COM, also dba        )
   EASYEZSTREET.COM, also dba             )
15 MINGLYCOMP.INFO, also dba              )
   EVERYFREEGIFT.COM, KENNETH CHAN,       )
16 aka KENNETH CHEN, SCOTT REWICK,        )
   DEREK PILCH, FREDRICK HARMAN, and      )
17 DOES ONE through FIFTY, inclusive,     )
                                          )
18                                        )
           Defendants.                    )
19 _____

20

21

22        **DOCUMENTS SUBMITTED**

23           **UNDER SEAL**

24

25

26

27

28

2376015



**FILED**
In the office of the Secretary of State
of the State of California

**JAN 1 0 2002**

BILL JONES, Secretary of State

## ARTICLES OF INCORPORATION

### OF

### Y.F. DIRECT INCORPORATED

ONE: The name of this corporation is Y.F. Direct Incorporated.

TWO: The purpose of this corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

THREE: The name and address in this state of the corporation's initial agent for service of process is:

> Kenneth Chan
> 926 Willowleaf Dr. 201
> San Jose, CA 95128

FOUR: This corporation is authorized to issue only one class of shares of stock, which shall be designated common stock. The total number of shares it is authorized to issue is 20,000,000 shares.

FIVE: The names and addresses of the persons who are appointed to act as the initial directors of this corporation are:

| Name | Address |
|------|---------|
| Kenneth Chan | 926 Willowleaf Dr. 201 San Jose CA 95128 |

———————————      ———————————

_____    _____

_____    _____

_____    _____

SIX: The liability of the directors of the corporation for monetary damages shall be eliminated to the fullest extent permissible under California law.

SEVEN: The corporation is authorized to indemnify the directors and officers of the corporation to the fullest extent permissible under California law.

IN WITNESS WHEREOF, the undersigned, being all the persons named above as the initial directors, have executed these Articles of Incorporation.

Dated: _1/1/2002_

_Kenneth Chan_

The undersigned, being all the persons named above as the initial directors, declare that they are the persons who executed the foregoing Articles of Incorporation, which execution is their act and deed.

Dated: _1/1/2002_

_Kenneth Chan_

# DATACHASERS® INC: Phillips v Netblue Service Agreement and Fees

**Forensic Computer Evidence Discovery, I.A.C.I.S. Certified**         **DataChasers EIN: 33-0939558**

P.O. Box 2861, Riverside, CA 92516-2861 • Direct: 951-780-7892 • Fax: 951-780-9199 • www.DataChasers.com

DataChasers® is a registered trademark of DataChasers, Incorporated , CDCA License PI-20551

RE case name: _____ ,

I, the below signed (see last page), as the Client, Client's attorney, or authorized agent of (Client's name):

_____

hereinafter known as "Client," do hereby retain the services of DataChasers® Inc. to perform forensic computer services, examine or review items related to this case, and to give evidence, render opinions, and perform related tasks as directed.

**Client acknowledges, understands and agrees to all of the following—please read carefully. A facsimile of this document is deemed as valid as the original to commence services, Client shall then mail signed original Agreement to DataChasers® within three days, non-receipt of which may delay services and or production of work product.**

## 1. RIGHT TO AUTHORIZE AGREEMENT AND INCLUSION OF ITEMS:

a) Client warrants and affirms that they have the lawful right and authority to sanction and authorize this forensic computer, and/or file, and/or media, and/or network examination because (1) all items are under their ownership, dominion and control; and/or (2) due to consent agreement, court order or other legal process; and/or (3) no privacy protection law, issue, or privacy expectation whatsoever is compromised or violated by this examination; and (4) this examination is in accordance with all laws, regulations and codes.

b) Client confirms that this Agreement is regarding the examination of an inanimate machine—to wit: computer(s) and/or media. DataChasers' discovery of any media, content or data, whatsoever, does not in any way restrict or prohibit DataChasers from complying with all laws and regulations specific to such content or data.

c) It is Client's desire and intent that this Agreement includes all items associated with DataChasers® services, whether added after the date of signing, or whether specifically listed herein or not: All items are intended to be included in this Agreement.

d) A current court order, specific to DataChasers, MUST accompany any and all materials which may, by their nature or content, be illegal for any person not in law enforcement or an officer of the Court to possess.

## 2. ALL SERVICES ARE DEPENDENT ON AGREEMENT & RETAINER:

a) All remuneration for services is in accordance with the Fee Schedule. Advanced and continuing compensation ("retainer") is normally required. The retainer presumes Client's accurate description of the scope of the project; will be sufficient to fund the total job; may be adjusted for specific requirements; must be funded prior to depletion; but does not include further services or testimony of any kind.

b) Cases are assigned first-come-first-served. Client may receive an account statement on request, understands that service is rarely rendered in arrears, and agrees to fund the continuing examination accordingly.

c) Client has read, understands, and agrees to the terms of this Agreement and Fee Schedule, which is applicable to this case and may differ from other DataChasers Agreements/engagements; Client acknowledges and accepts this consideration.

d) Any portion of funds provided by Client and not used in accordance with this Agreement is refundable.

## 3. CONFIDENTIALITY; CONTINGENCY; EXPECTATION; TOTALITY; & LIABILITY:

a) The relationship between DataChasers® and Client is confidential. Reports are made at the request of Client, for Client's information only.

b) DataChasers® agrees to be an advocate for the data, the litigation process, and the jury; therefore, DataChasers' fees are not contingent on the results obtained by this engagement or on the outcome of any examination, service, or testimony—the evidence speaks for itself. There is no guarantee, expectation or promise expressed or implied by DataChasers® as to the outcome of this or any examination, service or testimony whatsoever.

c) The entire manner, methods, means, totality, and sufficiency of conducting any and all examinations shall be within the sole discretion of DataChasers. DataChasers may and does assign Clients' examination services to independent contractors.

d) Client confirms that DataChasers is not liable/responsible whatsoever for any of the following: any type of loss, damage, corruption or theft of any property, equipment or data; or any hardware or software or media failure of any type; or for maintaining, safeguarding, backing up, preserving, archiving or storing any/all property, records, reports, data, or media of any kind; or for any claims relating to the aforementioned as a result of DataChasers' services. If desired/applicable, Client is solely responsible for accomplishing a backup of all data/media prior to DataChasers involvement and DataChasers® is in no way responsible for accomplishing or advising to accomplish this backup.

## 4. INDEMNIFICATION:

a) DataChasers® is an independent contractor at the behest of Client, and will not, in any way, be considered or held liable for any aspect of this Agreement/engagement, or from/in any action ("Claims") resulting therefrom.

b) Client shall, at its expense, protect, defend, indemnify, hold harmless, separated and immune DataChasers, its principals, officers, employees, and independent contractors from any and all liabilities, claims, consequences, causes of action, losses, damages, expense, or costs ("Claims") (including reasonable attorneys' fees, costs, and expenses) whatsoever, which may arise out of or in connection with DataChasers' good faith efforts, activities, services, performance, or examinations engaged in or rendered on behalf of Client.

Continued on Page 2.  **Initial & Date Page 1: Plaintiff** _____  Defense: _____

c) Notwithstanding the aforesaid. DataChasers shall never be held liable, whatsoever, for any Claims exceeding the remuneration originally paid to DataChasers; regardless of by whom it was paid or for what purpose.

**5. STORAGE, RETENTION, AND DISPOSITION OF ITEMS:**

a) Equipment and work product are and remain the property of DataChasers.

b) A storage fee for each item/media (e.g., computers, hard drives, and/or work product) may take effect 120 days following DataChasers' last (most recent) actual job-task service (excluding communications).

c) Any/all items (computers, equipment, data, etc.) submitted to or acquired by DataChasers relating to this Agreement (or DataChasers work product therefrom) may be held as surety until the retainer is fully funded or the balance owed is zero.

d) Any and all items that have not been claimed and fully paid for (including storage fees) within 180 days following DataChasers' last (most recent) actual job-task service (excluding communications) shall be considered abandoned by Client and may be disposed of (including all data/media containing data) at DataChasers' sole discretion, and DataChasers is under no obligation to give prior notice to Client.

e) Client agrees to pay any/all debt-collection costs, including, without limitation, reasonable attorneys fees.

**6. AUTHORITY; TERMS OF AGREEMENT; TERMINATION OF AGREEMENT; SEPARATION:**

a) All conditions and provisions of this Agreement are made with the knowledge, consent and approval of Client's legal counsel.

b) This Agreement constitutes the full and complete agreement between DataChasers and Client; no other Agreement, statement, or promise relating to the subject matter of this Agreement, which is not contained herein, shall be valid or binding.

c) Client and DataChasers® each have the right to immediately terminate this Agreement.

d) Any provision of this Agreement found to be invalid or unenforceable by a court of competent jurisdiction shall be considered severable from the remainder of the Agreement.

**7. FEE SCHEDULE:**

A. **RETAINER—COMPUTER FORENSICS**: services requiring the skills of a CFCE (Certified Forensic Computer Examiner):
   1) Complete forensic examination, extraction, production, and computer use analysis of all HDD data, including deleted data.
   2) Please see website for additional information and available services: www.DataChasers.com.
   3) Time is dependent on scope of project. Hourly (after included imaging) = $250/hr. Retainer is generally $2,500/HDD.
   4) Selected non-profit organizations may be allowed a 15% discount.

B. **RETAINER—DATA PRODUCTION** of active, undeleted files for discovery litigation, litigation support, or simple recovery:
   1) Data is produced in a verifiable, approved industry-standard manner, forensically certifiable in court as authentic.
   2) Extraction, and production of data, hourly (after included imaging) = $175/hr. Retainer is generally $1,750/HDD.

C. **HARD DRIVE ("HDD") IMAGING (COPYING)** includes creating a forensically sound image of the HDD, image verification, and backup of the cloned HDD (sans servers —see below). **Imaging the HDD is included in the retainer** (see above):
   1) There is no charge for the two HDDs upon which DataChasers places the image and the backup copies.
   2) Flat rate up to 80GB = $850. Larger HDDs are generally $50 per 10GB over 80GB.

D. **RETAINER ONLY—REQUIRING NO FURTHER SERVICES** (see form) is generally $800.00. **NOTE:** Designation as expert (in any capacity) requires a funded *Attorney's Retainer Agreement* or *Service Agreement* being in effect.

E. **EXPERT WITNESS SERVICE**: Any litigation, court related presence, appearance, depositions, or testimony = $1,400.00 flat rate for the first four hours or any portion thereof, then $350.00/hour thereafter. Retainer is normally for a full day (eight hours). paid daily, prior to or upon arrival, plus travel and expenses. Any remainder is refundable.

F. **DATA RECOVERY:** Computer crash recovery = $250 triage, then quoted NTE cost given.

G. **SERVERS:** Imaging, extraction and processing, generally = $290 to $500/hour (software critical).

H. **DRIVING TIME AND TRAVEL CONSIDERATIONS:**
   1) Travel (driving time) over .8 hour (48 minutes) each way is halved (e.g., one hour travel is billed as half-an-hour).
   2) Mileage is $0.60/mile, rounded to closest 10/mile; meals per-diem is $50.00/day flat-rate.
   3) All air travel is no less than Business Class rates unless otherwise agreed upon.

I. **ACCOUNT BILLING FACTORS AND CONSIDERATIONS:**
   1) All billing is done in tenth of an hour increments, or portion thereof; six minutes equals one-tenth (.1) of an hour. Once commenced. a four-(4) hour minimum (plus travel & expenses) is applied to all examinations/services.
   2) A two-tenth (.2) minimum may be applied to each communication (telephone/e-mail/etc.).
   3) A written report is generally two (2) hours minimum (e.g., forensic exam, deposition analysis, etc.).
   4) Analysis/review of written reports/documents/deposition testimony, etc., is three (3) minutes/page minimum.
   5) Printed hard-copy of data, spreadsheets, etc. is billed at $0.25 per page plus setup/formatting time.
   6) Hourly charges and applicable expenses are the allocated hours/expenses per examiner.
   7) Remuneration is based on a combination/accumulation of examination time and computer run-time.
   8) The client may receive an account statement on request, and understands that service is rarely rendered in arrears; the retainer must be maintained with sufficient funds to insure that the retainer is not exhausted by current or anticipated tasks/expenses.
   9) The invoice may exceed original retainer without Client notification. Any balance owed is due immediately; however, due to exigent circumstances a net fifteen (15) days may be allowed with prior agreement, but must be paid-in-full before continuation of any services or testimony.

Continued on Page 3. Initial & Date Page 2: Plaintiff:_____    Defense: _____

10) A late fee of 10% per month, compounded monthly, may be applied to any unpaid balance past the 15 days net.

11) Notwithstanding other payment provisions, if any DataChasers services have been performed but the initial retainer is not fully funded within fifteen (15) days of those initial services, this Agreement may be considered terminated by Client and any/all evidence, whatsoever, disposed of at DataChasers' sole discretion, without Client notification.

12) Unless otherwise defined, HDD images are proprietary data files ("evidence files") format, readable only with specific forensic software; backups are saved in this proprietary format only (i.e., copies of the "evidence files").

13) HDD Images, backups and target/evidence HDDs are DataChasers®' work product and remain the property of DataChasers; however, Client may purchase evidence HDDs from DataChasers.

14) Cases requiring extensive tracking, management, or multiple examiners may be subject to administrative hours.

15) Extenuating circumstances include but are not limited to: Type of case, extended hours, poor environment, specialized forensic services, rush orders, anomalies or extraordinary circumstances, and may be subject to a 20% increase.

J. **REGARDING STORAGE, RETENTION, AND DISPOSITION** of Client's data/media/property (items), and/or work product/s:

1) In accordance with the Service Agreement, all applicable items shall be subject to a $50.00/item monthly retention/storage charge, billed in four-month increments, for four months at a time (i.e., $200.00/item).

2) Final disposition of any/all of Client's items/media/data/equipment/property or work product shall be in accordance with the Service Agreement.

K. **RETURNED BANK ITEMS:** Client will be charged a minimum of $50.00, or an amount up to and including the legal limit for any and all returned bank items, regardless of the reason the funds did not clear the bank.

L. **DATACHASERS® RESERVES THE RIGHT TO REFUSE SERVICE** to anyone, or any entity, for any or no reason.

### 8. SPECIFIC CONDITIONS

1. The clients are Netblue, Inc., Kenneth Chan, Scott Rewick and Derek Pilch ("Netblue") and Ritchie Phillips.

2. DataChasers agrees that all of its work in this matter will be strictly confidential and that it will take all appropriate steps to make sure that no information it obtains or creates relating to this assignment will be disseminated except as agreed in writing by the parties or ordered by the Court. In particular, DataChasers agrees to be bound by the Protective Order in this matter and acknowledges that such Protective Order provides that certain materials are considered confidential. If there are any conflicts between this agreement and the Protective Order, the Protective Order will govern.

3. Datachasers agrees to work as an independent expert, without partiality or prejudice to either client.

4. Phillips will provide to DataChasers a database of the email addresses for its customers. DataChasers will compare such database with Netblue's database of user contact data (sometimes also referred to as an opt in list). Netblue will provide its database in encrypted form. DataChasers may take commercially reasonable steps to confirm that the encryption key is operable (e.g., Netblue will provide 5 to 7 unencrypted email addresses in the encrypted database to Datachasers).

DataChasers will compare Phillips's database with Netblue's database to determine which, if any, email addresses provided by Phillips appear in Netblue's database. DataChasers will then prepare a report setting forth DataChasers findings, and provide said report to counsel for Phillips and Netblue.

DataChasers will send its bill for such services to Netblue which is solely responsible for payment.

5. Phillips will provide a list of email addresses to DataChasers that Phillips represents have not been used on the Internet. DataChasers will compare such database with Netblue's database, as discussed in Paragraph 4.

DataChasers will then prepare a report setting forth DataChaser's findings, and provide said report to counsel for Phillips and Netblue.

DataChasers will send its bill for such services to Phillips who is solely responsible for payment.

6. DataChasers will also be provided access to the entirety of all emails sent and received by Monica Gerber of Netblue.

DataChasers will use search software to search Ms. Gerber's emails for emails that contain the words, "SPAM", "SPAMMER", "junk email", "bulk commercial email", "Violation of terms and conditions", "Spamhaus", "Spamcop", "Eric Denton","ROKSO", "CAN-SPAM", "affiliate" or "sub-affiliate" within ten words of "terminate" or "terminated"". After DataChasers identifies the documents called for by the search terms, Netblue will review such documents for the attorney-client privilege or the work product rule ("privilege") and all emails (except those covered by privilege) will be produced. If Netblue withholds any email on the basis of privilege, Netblue will provide a privilege log to Phillips. Phillips and Netblue hereby agree DataChasers is not to read any of the emails (although the parties acknowledging that inadvertent review may occur in the collection and examination process) and allowing DataChasers to search the emails in this manner is not a waiver of the attorney-client privilege or the work product rule.

DataChasers will send its bill for such services to Phillips who is solely responsible for payment.

7. DataChasers will solely use Rick Albee or Matt Albee to perform services under this contract.

8. DataChasers expects to be paid for its services by the party so obligated before starting work for such services.

Continued on Page 4, which is the last page and contains only the signatures in agreement.

Initial & Date Page 3: Plaintiff _____  Defense: _____

Client or authorized agent has read, understands, and agrees to the terms of the above Agreement and Fee Schedule.

**IN FULL AGREEMENT FOR PLAINTIFF/S:**
this Agreement is executed as of this ‾2‾3‾ day of ‾January‾ , 20 ‾07‾ .

For Plaintiff signature: _____

Printed Name, Address & Telephone/s: ‾Jason K. Singleton‾

‾611 `L` Street, Suite A‾

‾Eureka, California 95501‾

_____

_____

**IN FULL AGREEMENT FOR DEFENDANT/S:**
this Agreement is executed as of this _____ day of _____, 20_____ .

For Defendant signature: _____

Printed Name, Address & Telephone/s: _____

_____

_____

_____

_____